## City of Chicago v. Mary Fitzgerald.

1. TRIALS—*Peremptory Instructions Should be Asked for at the Conclusion of the Evidence.*—This court will not review the action of the trial court in refusing to give an instruction directing a verdict for the defendant, where the instruction is asked by the defendant after the argument to the jury has commenced and is submitted along with other instructions submitting the case to the jury on the facts.

2. APPELLATE COURT PRACTICE—*The Rules of this Court in Regard to Abstracts Should be Obeyed.*—Parties bringing cases to this court for review should furnish the court with abstracts, in accordance with the rules of the court, in which matters upon which error is assigned must appear.

3. NEGLIGENCE—*Use of a Defective Sidewalk Not Negligence per se.*—The use of a sidewalk, with knowledge of its dangerous condition, may be evidence of negligence, but it is not negligence as a matter of law.

4. QUESTIONS OF FACT—*Certain Questions Are Held to be Questions of Fact Under the Evidence, and Hence, for the Jury.*—In a personal injury case the court discusses the evidence and concludes that it was for the jury to say, from the evidence, whether plaintiff used ordinary care to heal her injuries, whether her conduct was negligent in not calling a physician earlier, whether the treatment she received was proper or improper, and whether her subsequent sufferings resulted reasonably and naturally from her injury, from alleged negligence on her part, subsequent to the injury, or from alleged improper treatment by her physician.

5. DAMAGES—*Forty-five Hundred Dollars Held Not Excessive for Injuries to a Leg.*—The court discusses the evidence in reference to the injuries to plaintiff's knee-joint, and concludes that a judgment for $4,500 can not be held to be excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed March 24, 1898.

MILES J. DEVINE, JEREMIAH B. O'CONNELL and QUIN O'BRIEN, attorneys for appellant.

From the earliest reported cases in our reports where the question was passed upon, to the present time—a period of more than forty years—the general rule has been declared and recognized in opinions announced from time to time, that in order to recover for injuries from negligence, it must be alleged and proved that the party injured, at the time of the injury, observed due or ordinary care for his or her personal safety, and the burden of proving such fact is upon the plaintiff. Dyer, etc., v. Talcott, 16 Ill. 300; Kepperly v. Ramsden, 83 Ill. 354; City of Joliet v. Conway, 17 Ill. App. 577; City of Bloomington v. Chamberlain, 104 Ill. 268; Calumet Iron & Steel Co. v. Martin, 115 Ill. 358; North Chicago St. Ry. Co. v. Louis, 138 Ill. 9; Gerke v. Fancher, 158 Ill. 379; Ryan v. Armour, 166 Ill. 568.

Plaintiff was guilty of contributory negligence in knowingly exposing herself to danger which could have been readily avoided, and in attempting to step over a hole which she knew and saw was in the sidewalk. Lovenguth v. City of Bloomington, 71 Ill. 238; Village of Kewanee v.

Depew, 80 Ill. 119; City of Macomb v. Smithers, 6 Brad. 470; City of Centralia v. Krouse, 64 Ill. 19; City of Bloomington v. Read, 2 Brad. 542; Beach, Cont. Neg. (2d Ed.), Sec. 37 *et seq.;* Shearm. & Red. Neg. (4th Ed.), Sec. 30.

Cities are bound to keep their streets and sidewalks in a reasonably safe condition for persons using them in the exercise of ordinary care, but are not required to foresee and provide against every possible danger or accident. City of Chicago v. McGiven, 78 Ill. 347; City of Chicago v. Bixby, 84 Ill. 82; Town of Grayville v. Whitaker, 85 Ill. 439; City of Joliet v. Walker, 7 Brad. 267.

EDWIN WHITE MOORE, attorney for appellee.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellee, by her next friend, brought suit against appellant to recover damages for an injury alleged to have been caused by her falling into a hole in the sidewalk, about six inches in width by one foot in length, while walking, in the exercise of ordinary care, on Randolph street between West Fortieth and West Forty-first streets, Chicago. A trial before the Circuit Court and a jury resulted in a verdict for $4,500, on which the court rendered judgment, and the city has appealed.

It is claimed by appellant that the court should have taken the case from the jury, because of appellee's contributory negligence, for a failure to prove that the city was negligent, and also because the proof fails to show that appellee's injuries were not the result of the accident. The further claim is made that the verdict is excessive.

At the close of plaintiff's case, the defendant made a motion to instruct the jury to find the defendant not guilty, for the reason that the plaintiff had not made out a *prima facie* case, in that the evidence tended to show that the plaintiff, at the time of the accident, was not in the exercise of ordinary care. At the close of all the evidence this motion was renewed. Both motions were overruled. The instructions asked by the defendant are not abstracted, and

City of Chicago v. Fitzgerald.

we might, for that reason, disregard the questions raised on the motions to take the case from the jury. See Rule 18 of this court, which requires a complete abstract of the record; Lake v. Lower, 30 Ill. App. 500; Schober, etc., Co. v. Kerting, 107 Ill. 344; Gibler v. City of Mattoon, 167 Ill. 18, and cases cited.

But an examination of the record shows that no *written instruction* was asked of the court to take the case from the jury until after the argument to the jury commenced, when it was presented along with other instructions by both the plaintiff and defendant, on the questions submitted to the jury. This was too late, and the instruction then asked was waived by the submission of the other instructions on the merits by the defendant. It was not error to overrule the motions, as in neither case was any written instruction asked by defendant. Rev. Stat., Ch. 110, Sec. 52; Illinois C. R. R. Co. v. Wheeler, 149 Ill. 525; Hefling v. Van Zandt, 162 Ill. 162; West Chicago St. R. R. Co. v. Yund, 169 Ill. 47; West Chicago St. R. R. Co. v. Fishman, 169 Ill. 196, and cases cited.

Notwithstanding these questions are not properly presented by the abstract and record, we have given full and careful consideration to the evidence, and while we regard the case somewhat doubtful on the merits as to the questions of the contributory negligence of appellee, and whether her injuries are the result of the accident, we are not prepared to hold that the record presents such a case as would justify us in saying that it is our duty to overturn the verdict of the jury and the judgment of the court, who saw the witnesses and heard their testimony.

It appears that appellee, a school girl, attending high school, was familiar with the hole into which she fell, had passed over the street probably every day for some time previous to the accident, and had noticed the hole. She testified in substance, viz.: " I was going home from the grocery store with a friend, Miss Slobig; my little brother ahead of me. We were talking while we were walking there; we must have been looking straight ahead, I believe.

I may have been looking at Miss Slobig; I don't remember where I was looking. The hole was large enough for anybody to notice. I could not see ahead of me—was not walking extra fast—got right up to the hole; I didn't see it until I got right to it. I made an extra move to get over it, and fell into it. I could not see it at all until my foot was in it. I got right on it before I saw it, and I made an extra move to get over it, but I could not do it, and fell in. The lamp on the corner was not lighted. It was rather dark." On a former trial, in 1896, she testified : "I was going home from the grocery store, it was very dark and the lamps were not lit, and I attempted—I knew the hole was there and I attempted to step over it, and I could not see and walked into it, and fell on my knee and broke my knee cord."

Miss Slobig testified that as she and appellee walked along appellee stumbled and fell into the hole; that she (witness) was walking along and not noticing anything particularly, and the first thing she knew appellee fell. There was a lamp on the corner, but it was not lighted. On the former trial this witness testified, viz.: "As we got to this place here, Miss Fitzgerald, she intended to step over it, and in place of that she fell into the hole, and we picked her up and brought her home. We both allowed to step over it (the hole). Appellee tried to step over the hole. I was with her. I don't know that she (appellee) remembered it. She tried to step over the hole, and in place of that she fell in—stepped right in."

James Stevenson, appellee's brother, who was about eleven years of age at the time of the accident, and was walking ahead of her, testified that appellee fell in the hole; that he, with Miss Slobig, helped her home. It was between six and seven o'clock, and pretty dark. The lamp on the corner was not lighted; that he happened to look around at the time she fell.

This being the evidence as to how the accident occurred, we think it was a question of fact for the jury as to whether appellee exercised ordinary care to avoid injury. It can not

be said, as matter of law, under this evidence, she did not exercise ordinary care.

In City of Flora v. Naney, 136 Ill. 45, the court says: "But if the plaintiff knew that the sidewalk was out of repair, the law did not require her to go out into the street and pass around the walk. Although a person goes upon a sidewalk, knowing it to be out of repair, recovery may be had for an injury received, if ordinary and reasonable care has been used. The plaintiff's knowledge as to the condition of the sidewalk is one of the circumstances to be considered by the jury in determining whether there has been the exercise of ordinary care."

Also, in City of Sandwich v. Dolan, 141 Ill. 430, the court says: "The use of a sidewalk with knowledge of its dangerous condition may be evidence of negligence, but it is not negligence as matter of law." See also Village of Clayton v. Brooks, 150 Ill. 97; City of Springfield v. Rosenmeyer, 52 Ill. App. 301; Dundas v. City of Lansing, 42 N. W. Rep. 1011; Owen v. City of Chicago, 10 Ill. App. 465.

The evidence is undisputed that the hole had been in the walk for several months prior to the accident, and that fact was sufficient to charge the city with negligence, and the point does not seem to have been contested in the trial court.

The evidence shows that appellee, prior to the injury, had good health; that although she was, after her fall, helped home by her brother and friend, her knee was swollen and red and gave her pain; was bathed in arnica that night; the next morning the pain was so abated that she went to school, walked several blocks going to and coming from school, and climbed two flights of stairs each day for about one week, before a physician was consulted.

The physician testified that when he first saw appellee "there was an affection within the joint, that is, from the chronic inflammation of the synovial joint of the knee. This was about the middle of November, 1893. I treated Miss Fitzgerald in November, 1893, for an affection of the knee; for a chronic synovitis, chronic inflammation of the

lining of the knee joint. I treated her a long time (about two or three months) for that affection, and afterward sent her to a specialist, Dr. Andrews." After describing his treatment, he says, " the knee was very much enlarged when I sent her to Dr. Andrews, in worse condition than it was when I started at it." Dr. Andrews testified that she came to him in February, 1894; that she had an acute inflammation of the left knee joint; describes his treatment, and says that he treated her regularly until the middle of the following summer—the middle of July—and intermittently up to the time of trial; that she got better slowly for about six months, and then she didn't improve much; that the limb or knee joint remained persistently considerably swollen, and larger than its fellow in the neighborhood of an inch; that there was indication of softening of the bone; that he should look for a recovery perhaps running through a number of years, and when the recovery is complete, then that will mean that she has a very stiff knee and is considerably lame; that there is a probability that at any time a more acute inflammation may be " started up," and she might get abscesses through complete loss of function, and necessitate the complete amputation or removal of the joint.

Dr. Hipp says the inflammation was chronic, but he may have used that word in the sense that it was inveterate or slow of progress (which meanings are given for this word both by Webster and the Century), instead of the more commonly accepted meaning that it was of long standing. Dr. Andrews said the inflammation was acute in February, 1894. However this may be, appellant made no claim in the trial court that any inflammation existed prior to the fall.

The course of treatment given by Dr. Andrews was different from that given by the physician to whom she first went, and it is argued that appellee was negligent in not consulting a physician earlier than she did, and also that the treatment she received prior to going to Dr. Andrews was improper; but there is no evidence from which it can be said that she was negligent in not consulting a physician earlier than she did, nor that the treatment by the first physician

was improper under the conditions as they then appeared. It is a well known and generally well recognized fact that the most skillful and eminent physicians and surgeons advise and do give the most varying courses of treatment for apparently the same conditions. If there was a mistake made in this regard (which we think the evidence fails to establish), we are of opinion that appellee used ordinary care to heal her injuries, and we think it was a question for the jury to say, from the evidence, whether her conduct was negligent in not calling a physician earlier and whether the treatment she received was proper or improper, and whether her subsequent sufferings were attributable reasonably and naturally as the result of her fall, or from any alleged negligence on her part subsequently, or from any alleged improper treatment by her physician.

Appellee testifies that when Dr. Andrews ceased to treat her regularly, in July following the accident, she went to Glenwood Springs, Colorado, for treatment at the baths, where she remained until November, 1895; that sometimes she was able to walk, and then was not; that she used crutches most of the time and a cane, after she was hurt, right along; that there was pain in her knee all the time.

Dr. Hipp, the first physician who treated her, says so far as he is capable of judging, the enlargement of the cartilages of the bone and knee is permanent.

It is also claimed that appellee hurt her leg again after her fall, in Rothschild's store; and that this would in some degree account for her condition at the time of the trial; but that is not tenable. That injury was to the foot or ankle, and the evidence fails to show that she suffered from that in any way, or that it was claimed at the trial that her condition was in any way attributable to that hurt.

We can not say from all the evidence that the verdict is excessive, and the judgment is affirmed.