## THE CITY OF MATTOON

### v.

## CLEMENT F. FALLER.

*Opinion filed October 24, 1905.*

1. TRIAL—*when case against city for defective sidewalk should go to jury.* An action against a city for damages for an injury received from a defective sidewalk should go to the jury upon the question of the city's negligence, where the evidence shows that the city had notice, both actual and constructive, that the sidewalk was in bad repair yet permitted it to remain in an unsafe condition.

2. MUNICIPAL CORPORATIONS—*instruction requiring jury to find that repairs were "properly" made is not erroneous.* An instruction respecting the effect of repairs made by a city on a sidewalk, which requires the jury to find that the repairs were "properly" made, means no more than that they were of such a character as to make the sidewalk reasonably safe for public travel.

3. SAME—*whether city had reasonable time to repair after notice is for the jury.* Under evidence that plaintiff's injury occurred two months after repairs were made and that the city officers had in the meantime been twice notified that the walk was again out of repair, it is a question for the jury to say whether the city had had a reasonable time to make further repairs after notice and before the injury.

4. NEGLIGENCE—*fact that person uses sidewalk with notice of its defects is not negligence per se.* The facts that a person injured by a defective sidewalk knew of the defective condition of the walk and that he might have gone another route do not amount to negligence *per se,* but are circumstances to be considered by the jury in determining the question of contributory negligence.

5. SAME—*ordinary care is all the law requires of one knowingly using defective sidewalk.* All the law requires of a person going upon a public walk knowing that it is defective and knowing that there is another way of going to his destination is that he shall be in the exercise of ordinary care for his safety.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. JAS. W. CRAIG, Judge, presiding.

This is an action in case, brought to the October term, 1903, in the circuit court of Coles county by the appellee against the city of Mattoon to recover damages for a personal injury, resulting from a fall upon an alleged defective sidewalk in that city. The trial resulted in verdict and judgment in favor of the appellee for $1000, which judgment, upon appeal to the Appellate Court, has been affirmed. The present appeal is taken from such judgment of affirmance.

ANDERSON STEWART, City Attorney, and BRYAN H. TIVNEN, for appellant.

CRAIG & KINZEL, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In this case no errors are assigned on account of any ruling of the trial court in reference to the admission or exclusion of evidence. The only errors assigned relate to the giving and refusal of instructions.

*First*—It is assigned as error, that the court below, at the close of appellee's evidence, and again at the close of all the evidence, refused to give a written instruction, asked by the appellant, requiring the jury to find the appellant not guilty. The refusal of the court to instruct the jury to find for the appellant raises the question, whether or not there is any evidence, tending to show appellee's right of recovery. If there was evidence tending to show such right of recovery, then the court committed no error in refusing to direct the jury to find for the defendant. (*Central Railway Co.* v. *Knowles,* 191 Ill. 241; *Landgraf* v. *Kuh,* 188 id. 484).

The material facts of the case are substantially as follows: The appellee was a carpenter, and lived in a house in the city of Mattoon at the south-east corner of Twentieth and Moultrie streets. Twentieth street ran north and south. Moultrie street ran east and west and across Twentieth

street.  The next street east of Twentieth street, and parallel with it, was Nineteenth street.  Plaintiff had moved into the house, in which he lived, four or five months prior to his injury, which occurred on February 16, 1903.  The house faced north on Moultrie street, and the west side of it fronted on Twentieth street, and ran back to an alley, running east and west, south of appellee's place, and at about the middle of the block, in which his house stood.  The evidence is quite clear and conclusive that, for some two years prior to the accident, the sidewalk on the east side of Twentieth street, and on the west side of appellee's house, was in a defective condition.  The testimony of appellee, and his daughter, and of some four or five other witnesses, shows that this sidewalk on the east side of Twentieth street was, and had been out of repair and in bad condition.  It was a wooden sidewalk, and some of the sills were rotten, and some of the planks were decayed, loose, broken and unfastened.  The sidewalk was about four feet in width, and the planks ran east and west, except at the alley where they ran north and south, the alley being about twelve by sixteen feet in width.  At the crossing of the alley the boards were turned, or "cuffed" up, and the stringers were rotten, or partly rotten and broken.  The sills and stringers under the walk were rotted out, and the main planks broken, and a part of them projected up and part down.  This had been the condition of the walk for some two years.  There was no sidewalk at all on Moultrie street in front of appellee's house.  There was a cement sidewalk on the west side of Twentieth street.  At the south-west corner of Twentieth and Moultrie streets stood an old church; the crossing from the south-west corner of Moultrie and Twentieth streets to the south-east corner of Moultrie and Twentieth streets, where the appellee's house was, was in bad condition and out of repair.  On the morning of February 16, 1903, appellee had been at work at some point east and south of his home, and, having finished his work at about 10:30 in the morning, started for home.

He walked up Nineteenth street east of Twentieth street, until he came to the street running east and west that crossed Twentieth street next south of his house. He then turned west from Nineteenth street to Twentieth street and walked north on Twentieth street on the east side thereof to go to his home. He had in his hand, or on his shoulder, a small hand-box containing some tools, weighing from ten to twelve pounds. When he came to or near the alley in question, walking north on the east sidewalk of Twentieth street, one of the planks of the sidewalk running east and west was loose and unfastened. Appellee stepped on the east side of the plank near the center of the sidewalk, and the other side thereof flew up; and, in endeavoring to step over it with his other foot, he lost his balance, and got his foot caught on the edge of one of the defective planks, which was "cuffed up" at the alley crossing running north and south, and he was thrown off his balance diagonally across the sidewalk. He received severe injuries. His leg between the knee and the hip was fractured, and he was otherwise bruised and injured. He was confined to his bed for almost four months, and, since the injury, has been unable to work at his former trade. There is no dispute as to the extent or seriousness of his injury.

The first question which presents itself, is whether or not the appellant was guilty of such negligence, as caused the injury to appellee. The evidence shows that the city had not only constructive, but actual, notice of these defects in the sidewalk. It appears from the testimony of witnesses, produced by the city itself, that it attempted to repair a part of the sidewalk near this alley on or about December 15, or December 20, 1902. No attempt was made to repair the whole length of the sidewalk from Moultrie street south to the next street parallel with Moultrie street, which crossed Twentieth street, and along the west side of appellee's house. No new plank or new stringers were used in making such repairs. According to the testimony of the city, old planks

were taken from some other sidewalk in the city and used to make these repairs. One of appellant's witnesses says in regard to these repairs: "We didn't put in any new boards; we had a pile of old boards we brought from somewhere else; we didn't use a single new plank." Another witness of appellant says: "In these repairs we had some boards we had gotten from old walks." Another witness, still, of appellant, says: "We used lumber for repairing the crossing that we had taken out of other walks in town." One of appellee's witnesses says in regard to these repairs: "There were some broken·boards there in the crossing, that had existed pretty nearly all winter; it looked as though they had gone and nailed them down a little—some rotten boards there; they tried to fix them there—the rotten boards, and they didn't hold; they wouldn't hold." Appellee swears that, in January, 1903, he called the attention of one of the aldermen of the city to the condition of the sidewalk; and one Walker, who was present when the notice was so given, confirms appellee's statement. Some week or more before the accident to appellee, a lady fell upon the sidewalk at the same place, and was helped up by appellee. Thereupon appellee notified the city superintendent of streets of the occurrence, and called his attention to the condition of the walk, and the superintendent said: "I know it; it is a bad walk but they won't give me anything to repair it with; they give me the devil about the walk, but they don't furnish any material that I can do anything with." The evidence tends to show that the sidewalk at the alley in question was in a defective condition after the repairs were made in the middle of December, 1902, because the notices given to the street superintendent were given in January, 1903, and a week or so before the accident occurred.

The evidence above recited tends to show that the city was guilty of negligence in permitting the sidewalk to become as defective as it was, and in permitting it to remain defective after actual and constructive notice of its condition.

Indeed, counsel for the city substantially concede that the sidewalk in question was out of repair at the time when the accident occurred.

It cannot be said, therefore, that the trial court erred in refusing to take the case from the jury, inasmuch as the evidence tended to show negligence on the part of the city. The instructions given for the appellee and those given for the appellant announced the doctrine upon this branch of the case, that the appellee could not recover, unless the city had actual notice of the defective condition of the sidewalk, or unless the alleged defect was of such a nature and existed for such a length of time before the injury happened, that the city authorities could have discovered it by the exercise of reasonable care and diligence. The instructions also announced that it was the duty of the city to use reasonable care to keep its sidewalks in a reasonably safe condition; that is to say, reasonably safe for the use of the traveling public. Such is the law as announced by this court. (*Village of Mansfield* v. *Moore,* 124 Ill. 133; *City of Sterling* v. *Merrill,* id. 522; *City of Lanark* v. *Dougherty,* 153 id. 163; *City of Decatur* v. *Besten,* 169 id. 340; *City of Flora* v. *Naney,* 136 id. 45.) One of the instructions, given for the appellee, is criticised upon the ground that it left it to the jury to determine from the evidence whether or not the repairs, claimed to have been made by the appellant, were "properly" made. The objection to the use of the word "properly" is that it left too much to the conjecture of the jury as to what was proper, and that the use of that word might lead the jury to conclude that the sidewalk must be absolutely safe. There was evidence, tending to show that the repairs made by the city in December, 1902, were made of old material, and were so imperfectly made as not to cure the defect in the sidewalk at the point where they were made. It was in view of this evidence that the instruction was given. Whether the use of the word "properly" was strictly and technically correct or not, the jury

could not have been misled as to the obligations of the city
in regard to the condition of its sidewalks, because many·
instructions were given for both sides, which laid down the
rule, that the city should use reasonable care and diligence
to keep its walks reasonably safe for the use of the traveling
public. They could not have derived the idea from the in-
structions that, in requiring the city to properly repair its
sidewalk, it was required to do anything more than to make
such sidewalk reasonably safe for the use of the public. In
·*Whitney & Starrette Co.* v. *O'Rourke,* 172 Ill. 177, an in-
struction stated that it was the duty of a contractor, in erect-
ing a building, to use reasonable care to keep boards, used
as a covering for the sills of a building, "securely fastened,"
and it was objected to the instruction that the words "se-
curely fastened" had the same meaning as "absolutely safe,"
but this objection was held to be without force. So, here,
in requiring the city to "properly" repair its sidewalks, the
requirement was not that it should repair them so as to make
them absolutely safe, but reasonably safe for the use of the
traveling public. One of the instructions, given for the ap-
pellee, is objected to as assuming that the walk where appel-
lee was hurt was in a defective condition. The evidence was
uncontradicted that it was in a defective condition, but the
instruction is not justly subject to the criticism made upon
it, because the clause, referring to the defective condition of
the walk, is coupled with several other clauses, which follow
the phrase, "if the jury believe from the evidence," showing
that the jury were to find from the evidence whether or not
the walk was defective, as charged by the appellee. In *Chi-
cago and Alton Railroad Co.* v. *Fisher,* 141 Ill. 614, an in-
struction was objected to as assuming that the appellant was
guilty of negligence, and we there said (p. 625): "The in-
struction does not assume that the appellant was guilty of
negligence, for the qualifying words, 'if the jury believe
from the evidence,' apply to the entire sentence." Counsel
for appellant seem to assume that the repairs were made at

so recent a period before the occurrence of the accident, that the city could not have had reasonable notice of the existence of any defect existing after the making of such repairs. The evidence, however, shows—and the instructions were directed to the evidence—that the accident occurred some two months after the repairs were made, and that, after the making of the repairs, notice of the defective condition of the sidewalk was given to the officers of the city on at least two different occasions. It was for the jury to say whether or not a sufficiently reasonable time had elapsed after notice of the defect to enable the city to make such repairs as would cure it. All the instructions given told the jury that it was the duty of the city only to exercise reasonable care and diligence to keep the walk in a reasonably safe condition, and, when no time is stated in an instrument, the law implies a reasonable time. It may be said here, as was said in *Town of Wheaton* v. *Hadley,* 131 Ill. 640: "If the town had laid a new walk out of defective material, from which an injury resulted, the town would have been chargeable with notice of the defect. So in this case, if the authorities, having both actual and constructive notice of the defective condition of the walk before the repairs were made, so made the repairs that the walk was left in unsafe condition and repair, because of the defective material therein, they would be liable for injury resulting from such defect."

The instructions, asked by the appellant and refused by the court, either announced principles inconsistent with those here stated, or simply repeated those which were embodied in instructions given for the appellant, and, therefore, their refusal was not error.

*Second*—The next question presented by the record in the case is the question, whether or not the appellee was guilty of such contributory negligence, as caused the accident and the injury to him. The main defense, set up by the appellant, is that the appellee was guilty of contributory negligence. Such contributory negligence is said to consist in the

facts, first, that the appellee knew of the defective condition of the sidewalk when he went upon it, and, second, that he might have gone to his home by another way than the one, which he took to get there. The appellee might have crossed Twentieth street to the west side thereof, and then walked upon the cement sidewalk up to the south-west corner of Moultrie and Twentieth streets, and then crossed over Twentieth street on the south side of Moultrie street to his house. The evidence, however, is clear that the walk across Twentieth street from the south-west corner of that street and Moultrie street to the south-east corner of Twentieth and Moultrie streets was in bad repair and poor condition. One of the witnesses testifies that this crossing on the south side of Moultrie street was so much out of repair that some of the boards were loose and stuck up, and that the sills were rotten. Appellee might have gone from Nineteenth street through the alley to the rear of his house and entered through the back yard, but the evidence tends to show that very often the alley was muddy. It is true that the appellee knew of the defective condition of the sidewalk when he went upon it.

It is, however, well settled law in this State, that, where a man knows of a defect in a sidewalk and walks thereon, his doing so with such knowledge is not negligence *per se,* as matter of law. The fact, that he goes upon the sidewalk with knowledge of the existing defect, is a circumstance to be taken into consideration by the jury with all the other facts and circumstances in determining the question, whether he was guilty of contributory negligence. The same is true as to the fact that he might have taken another route to reach his destination than the one which he actually pursued. The fact, that it was possible for him to take such other route, is merely a circumstance to be taken into consideration by the jury in determining the question of contributory negligence, and is not evidence of negligence *per se,* as matter of law. All the law requires of a man, going upon a public sidewalk with knowledge that it is defective, and with knowledge that

there is another way of going, is that he shall be in the exercise of ordinary care for his own safety.

In *Village of Clayton* v. *Brooks,* 150 Ill. 97, we said: "If a person attempts to pass over a sidewalk, bridge, or other structure, knowing the same to be in a dangerous condition, and in such attempt receives injury, his knowledge of the danger will presumptively establish contributory negligence. But such presumption is not conclusive. It is disputable and may be rebutted by evidence of the exercise of ordinary care under the circumstances of the particular case. * * * In general, the question of negligence is one of fact. * * * Hence, an instruction is properly refused, which tells the jury, as a matter of law, that certain facts *per se* constitute negligence. * * * The law is, we think, well settled, that knowledge of the defect in the sidewalk by the person injured before he goes upon the same, or before the injury, does not *per se* establish negligence upon his part. * * * It is plain that one may exercise due care with full knowledge of the danger, to which he is exposed, or to which he lawfully exposes himself. This certainly is not contributory negligence." In the same case of *Village of Clayton* v. *Brooks, supra,* it was said, quoting from Shearman & Redfield on Negligence (p. 106) : "The mere fact, that a traveler is familiar with the road and knows of the existence of a defect therein, will not impose upon him the duty to use more than ordinary care in avoiding it. * * * Such knowledge is a circumstance, and perhaps a strong one, but it should be submitted, with the other facts of the case, to a jury for them to determine, whether, with such knowledge, the plaintiff exercised ordinary care in proceeding on a way known to be dangerous, or, in proceeding, used ordinary care to avoid injury. * * * But the mere fact, that * * * he [the traveler], might have taken a nearer way, is immaterial, as it is the duty of the town to repair all the streets." "The fact, that a traveler on a highway perceives that an obstacle therein is dangerous to persons attempting to pass it, is not con-

clusive that he does not use due care in making the attempt."
(*Village of Clayton* v. *Brooks, supra,* p. 107). In *City of
Aurora* v. *Dale, 90* Ill. 46, this court held that traveling upon
a sidewalk by one, having notice of dangerous defects there-
in, does not necessarily constitute negligence. In *City of
Aurora* v. *Hillman, 90* Ill. 61, it was said: "Nor does the
mere fact, that plaintiff might have taken a better and safer
sidewalk than the one he did take, charge him with want of
ordinary care." In *Village of Clayton* v. *Brooks, supra,*
it was further said (p. 107) : "The ultimate fact submitted
to the jury in this case, in respect to the matter under con-
sideration, was, whether the plaintiff was guilty of contribu-
tory negligence, and the fact, that she returned home over
the defective sidewalk with knowledge of its unsafe condi-
tion, was a circumstance proper to be shown as tending to
establish such negligence. It was an evidentiary fact, and
as such was properly allowed to go to the jury, as having a
tendency to prove the ultimate fact in question. It was prop-
erly submitted with all the other evidence illustrating the
same question. * * * The jury, upon full consideration,
have found that she exercised ordinary care, and that finding
having been affirmed by the Appellate Court, is conclusive
upon that question of fact."

In the case at bar, the instructions, given for the appel-
lee, announced to the jury the doctrine already stated, that
is, that appellee was only required, under the circumstances,
to exercise reasonable or ordinary care and caution, and that
whether or not he was exercising such care and caution at
the time of the injury, was a matter for the jury to determine
from all the facts and circumstances shown on the trial. The
evidence of the appellee tends to show that he paid particular
attention to where he was going, and that he was walking
at an ordinary gait. He was asked, when upon the witness
stand, what precaution he took for his own safety, and an-
swered that he took extraordinary precaution, as any person
would. Objection was made to the use of the word "extraor-

dinary," and his answer in that respect was excluded. Thereupon, he stated that he was "walking my ordinary walk; a loose board that had slipped to one side was so near the other side I did not really notice it." His evidence showed that the board, which caused him to stumble, could not have been easily seen, and that he was thrown off his balance, and, in trying to make a long step, caught his toe on the end of an upturned plank at the alley crossing, and was thus thrown down. It was for the jury to say, under this evidence, whether or not he was in the exercise of ordinary care. The evidence tended to show that he was in the exercise of ordinary care, and the judgments of the lower courts are conclusive upon that subject. In *City of Streator* v. *Chrisman,* 182 Ill. 215, it was again said: "It is contended that appellee knew of the defect in the walk, and was therefore guilty of contributory negligence in going upon it. Although a person, passing along a sidewalk, may know it is out of repair, he may, notwithstanding such knowledge, recover for a personal injury occasioned by the defective walk, if he uses ordinary and reasonable care. * * * Whether due care was exercised in using a sidewalk, knowing it to be out of repair, is a question of fact for the jury." (*City of Flora* v. *Naney,* 136 Ill. 45; *Village of Cullom* v. *Justice,* 161 id. 372).

Appellant criticises one of the instructions, given for the appellee, which announced the obligation of appellee to exercise ordinary care, because the instruction also announced "that the law did not require extraordinary care of the plaintiff at the time in question." The instruction was not erroneous for the reason thus indicated. In *City of Bloomington* v. *Chamberlain,* 104 Ill. 268, we said: "One of the refused instructions asked by defendant, was, that, if plaintiff knew of the defective condition of the sidewalk, it was her duty to exercise a high degree of care while passing over it. The degree of care, which the law required the plaintiff to exercise, was ordinary care, under all the circumstances of the case. The plaintiff's knowledge as to the condition of the sidewalk

would be one of such circumstances to be considered by the
jury in determining, whether there had been the exercise of
ordinary care.   *   *   *   We think the instruction given
stated the law upon the subject sufficiently favorable for the
defendant." If, as is here announced, it was not the duty of
the appellee to exercise a high degree of care, or, which is
the same thing, an extraordinary degree of care, then the
instruction stating that the law did not require extraordinary
care was not objectionable.

Counsel for appellant complain that the court modified
the first instruction, asked by the appellant, and gave it as so
modified. The instruction, as originally asked, substantially
stated to the jury that, if they believed from the evidence
that, for some time prior to receiving the injury, the plaintiff
knew of the existence of the danger, and if they believed
from the evidence that he could safely have gone to his home
by some other walk with safety, he did not exercise the de-
gree of care and caution for his own safety required by the
law, and that the verdict should be for the defendant. This
instruction was wrong, because it told the jury in substance
that appellee's knowledge of the defect when he went upon
the walk, and his ability to go by some other road, were evi-
dence, as matter of law, of a want of the degree of care and
caution required by the law. The modification, made by the
court, so changed the instruction, as to tell the jury that they
might take these matters into consideration in determining
whether or not the appellee used ordinary care for his safety.
The instruction was modified in accordance with the princi-
ples of law sustained by the foregoing authorities, and, there-
fore, the modification was proper.

Upon this branch of the case, relating to the question
of contributory negligence, counsel for appellant complain of
the refusal of the trial court to give certain instructions asked
by them. The appellant submitted to the court forty-three
instructions, of which the court gave seventeen. The in-
structions, which the court gave for the appellant, were fa-

vorable to it, and presented to the jury clearly and forcibly appellant's view of the case. There was no material error in refusing the instructions, which were refused, because those of them, which did not contravene the rules of law already announced, were substantially embodied in instructions, which were given for appellant.

We find no substantial error in the record, which would justify us in reversing the judgment in this case. But we do not think it sufficiently clear that this appeal has been prosecuted for delay to justify us in awarding damages of ten per cent, as requested by appellee.

Accordingly, the judgment of the Appellate Court is affirmed.                    *Judgment affirmed.*