## Jennie Brennan, Appellee, v. City of Chicago, Appellant.

## Gen. No. 16,519.

1. CONTRIBUTORY NEGLIGENCE—*walking upon sidewalk.* A person walking upon a sidewalk is not bound constantly to keep his eyes fastened upon the ground, and to fall in a hole in a sidewalk is not contributory negligence as a matter of law, but the question as a general rule is one which is to be determined by the jury from a consideration of all the facts and circumstances in evidence.

2. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

Action in case. Appeal from the Superior Court of Cook county; the HON. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed May 9, 1912.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for appellant; EDWARD C. FITCH, of counsel.

GEORGE E. GORMAN and RICHARD J. FINN, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Jennie Brennan, hereinafter called plaintiff, recovered a verdict and judgment against the city of Chicago for $5,000 in an action brought by her to recover damages for injuries which she claims to have

received by falling through a public sidewalk on the east side of Halsted street, between 33rd place and 34th street, in Chicago, on the evening of July 27, 1901:

This case has been tried three times. On the first trial plaintiff was awarded $4,500; upon the second trial the jury disagreed; and we are asked to reverse the judgment rendered in the third trial, upon the grounds that appellee was guilty of contributory negligence, and that the verdict and judgment are excessive and the result of sympathy and prejudice.

It is not disputed that at the place in question there was a hole in the wooden sidewalk about two feet in width and fifteen feet in length, caused apparently by the absence of two boards in the walk. This condition had existed for two or three months. The plaintiff was not aware of this condition, as she had not passed over this walk for some months before the time of the accident.

There is considerable variance in the testimony of witnesses as to the time of the accident, some placing it as early as 7:30 P. M., others around 8:00 o'clock, while plaintiff testifies that it was close to 9:00 o'clock. The official records show that on that evening the sun set at 7:25. Witnesses testified that it was dark. One witness, a police officer, states: "It was dusk, and I could see people moving about. I think the gas lights were lit, but I am not sure." Plaintiff testified: "I could not see very far ahead, as it was dark, but I could see about so far" (indicating about 15 or 16 feet). She further testified that just before the accident she was looking at a street car passing on Halsted street. She says: "The motorman was ringing the bell and I looked out at the street car and I seen a boy running across, and I looked again at the street car and turned on my way, and I then fell through the hole." This is the only evidence as to the occurrence itself.

It is argued that the conduct of the plaintiff in fail-

ing to see the hole constitutes contributory negligence, and many cases are cited, most of which are decisions of courts in other states. We are inclined, however, to follow the decisions of our courts, which seem to control this case. In City of Chicago v. Babcock, 143 Ill. 358 (363), the court said:

"A person passing along a sidewalk in a city is required to use ordinary and reasonable care and diligence to avoid danger, but what is such ordinary and reasonable care depends upon the circumstances of each particular case, and is a question of fact for the jury. A pedestrian upon such sidewalk may ordinarily assume that the sidewalk is in a reasonably safe condition for travel. To hold that such person is absolutely bound to keep his or her eyes constantly fixed on the sidewalk in a search for possible holes or other defects, would be to establish a manifestly unreasonable and wholly impracticable rule."

To the same effect are the City of Chicago v. Fitzgerald, 75 Ill. App. 174; Campbell v. City of Chicago, 100 id. 358; City of McLeansboro v. Trammell, 109 id. 524; Village of Wilmette v. Brachle, 110 id. 356; City of Streator v. Chrisman, 182 Ill. 215; City of Spring Valley v. Gavin, id. 232; City of Mattoon v. Faller, 217 Ill. 273. These cases are conclusive of the proposition that the question of contributory negligence of the plaintiff was for the jury to determine, and we cannot say in this case that their verdict was contrary to the weight of the evidence.

We have more difficulty in arriving at a clear understanding of the nature and extent of plaintiff's injuries. Plaintiff was a married woman, thirty-eight years of age at the time of the accident, and had given birth to five children before that time, with no particular trouble in childbirths. Her family physician, Dr. Reilly, who examined her immediately after the accident, testifies that he found her sitting in a chair, fully dressed except for the shoe and stocking of the

right foot and leg; that plaintiff complained of nothing but her leg; that he noticed no other unusual condition about her, and told her to give the limb rest and quiet and she would be all right in a few days; and that he did not go back the second day because he did not consider it necessary. He further testifies that prior to the accident he had often called to attend plaintiff for asthmatic bronchitis and for paroxysms, and described her symptoms. Plaintiff positively denies that Dr. Reilly ever attended her for any complaint except childbirth. She testifies that her health before the accident was good; that she always did her own housework and had no one to help her; that she had no trouble with her heart or difficulty in breathing, or any weak spells before the accident. During the night of the accident she testifies to having suffered great pain in her toe, knee and side; had several weak spells during the night and spit up some blood; she was confined to her bed for seven weeks, and suffered great pain. The day following the accident she was attended by another physician and also by a nurse, the nurse attending her for about three months. For about a year after the accident she was afflicted more or less with fainting spells and pain around the heart. There is evidence tending to show that while confined to her bed she developed an inflammation of the lining of the lungs; that the left lung became congested and inflamed, which gave rise to considerable fever; that she had more or less trouble in breathing; that this was followed by inflammation of the pericardium, involving the heart muscles, and her heart afterwards became weaker.

Dr. Eiss, the physician called in the day after the accident, testifies that he found on examination a bruised and swollen condition of the right knee and toe, some bruises across the back on the right side, just through the region of the heart, also a fracture of the fifth and sixth ribs; that plaintiff developed

pleuro pneumonia, followed by inflammation of the pericardium involving the heart muscles; that this was followed by attacks of difficulty in breathing; that he treated her more or less for a few years; that during the first year after the accident she had difficulty in breathing and complained of pain in her chest in the region of the heart. A year or two afterwards she was laid up with hypostatic pneumonia, due to a congestion of the lower portion of the lungs by reason of a weak heart. The heart gradually became dilated and distended. He further testified that she had a lesion of the "mitral valve of the heart," which condition of the heart is permanent and incurable.

It would serve no useful purpose to recite the testimony of many other witnesses, some of whom testified as medical experts.

It is earnestly contended that from the condition in which plaintiff was found in the hole of the sidewalk it was impossible for her to have received the fractured ribs at that time; but this does not seem to us to have been physically impossible, and the surrounding circumstances and resultant conditions suggest a reasonably clear inference that these injuries were caused by the accident.

It seems equally reasonable to infer from the evidence that her present condition might have resulted directly from the injuries received at the time of the accident. There is some evidence suggesting that her physical condition prior to the accident might have brought about her present condition, but we are unable to conclude from the entire record before us that this is the fact. In view of what is apparently admitted to be her present condition, and the absence of evidence of sufficient weight to overcome the inference that this condition is the result of the accident; and in view of the fact that the jury and the court below saw and heard the witnesses who testified for the city touching plaintiff's condition of health prior

to and subsequent to the accident, we are not prepared to say that the opinion of the jury as to the proper compensation for such injuries is not justified. We do not believe that the finding of the jury on this point should be disturbed unless it clearly and manifestly appears that the amount awarded is excessive.

Concluding, as we do, that the jury's finding as to the negligence of the defendant and the exercise of due care by the plaintiff is warranted by the evidence, and that we cannot say that the amount awarded in plaintiff's favor is excessive, the judgment will be affirmed.

*Affirmed.*