**Anna C. Swenson, Plaintiff-Appellee, v. City of Rockford, Defendant-Appellant.**

**Gen. No. 10,856.**

Second District.

September 27, 1955.

Released for publication October 17, 1955.

Angelo N. Gaziano, and Laverne E. Anderson, both of Rockford, for defendant-appellant; Angelo N. Gaziano, of Rockford, of counsel.

Irving M. Greenfield, of Chicago, and Henry H. Caldwell, of Rockford, for plaintiff-appellee; Henry H. Caldwell, of Rockford, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

This action was brought to recover damages for personal injuries sustained by the plaintiff when she fell, on June 13, 1953, while walking along a cement sidewalk on the east side of South Main Street in front of the Galluzzo Market in the City of Rockford. The issues made by the pleadings were submitted to a jury, resulting in a verdict and judgment in favor of the plaintiff for $15,000, and defendant appeals.

There is no question raised as to the pleadings, the admission or rejection of evidence, the general instructions of the court to the jury at the conclusion of the evidence, or the amount of the verdict. The only errors relied upon for reversal are the refusal of the trial court to direct a verdict in favor of the defendant at the close of the plaintiff's case and following the return of the verdict, its failure to sustain defendant's motion for judgment notwithstanding the verdict. It is insisted by counsel for appellant that the evidence discloses no actionable negligence on the part of the city and that plaintiff, as a matter of law, was guilty of contributory negligence.

The plaintiff was the only occurrence witness. She testified that she was sixty-six years of age at the time of the accident, and only wore glasses to read and sew and did not have them on when she left her home between three and four o'clock of the afternoon of June 13, 1953, to go to the Galluzzo Grocery and Market, located at 1418 South Main Street in Rockford. The plaintiff and her husband lived at 1423 Rock Street, which was one block east of the grocery, and had lived there for ten years prior to the date of the accident. In order to reach the grocery, she went out the back door of her house and walked through an alley between a building occupied by a laundry located just south of the grocery and went around the west end of the store building on a concrete sidewalk. She testified she had traveled this course from her home to the grocery four or five times a week for ten years, and

upon her first trip to the grocery, on the afternoon of June 13, 1953, she saw the crack in the sidewalk where she fell and had also observed the place where she fell "before June 13, 1953, for quite awhile." She was wearing white low-heeled shoes and, without any mishap, entered the grocery, made her purchases, and returned to her home. When she arrived home she discovered she had forgotten to purchase some article and immediately returned to the store by the same route. She testified that the weather was pleasant and it was a clear, sunny day.

After testifying that she had noticed this long crack in the cement sidewalk not only on her previous trip to the grocery that afternoon but also on other occasions, the plaintiff was then asked by her counsel on direct examination: "Did you fall down any place near a grocery store, Mrs. Swenson?" and her answer was, "Yes, I did." She was then asked: "And where did you fall?" and she replied: "When I went to the grocery store, I noticed this long crack in the sidewalk which had made the sidewalk fall down forming a ridge, and on the end of this ridge was a hunk of cement. When I went to go into the grocery store, I went to go over this ridge and my foot slipped off that ridge and I knocked my foot into that piece of cement and went off balance and fell on my right side." She further testified that after she fell she laid on the sidewalk about a minute and then got up and walked into the grocery and later walked home.

On cross-examination, plaintiff testified that at the time she fell she was walking no faster than usual and as she came around the corner of the building on her way to the store the second time that afternoon, she saw the ridge in the pavement and as she proceeded she placed her left foot on the ridge and her foot slipped off the ridge, which she estimated to be about two inches, and she fell. She further testified that she

had seen this ridge before but had never stumbled there prior to the afternoon of June 13, 1953.

The plaintiff's husband, Hjalmar Swenson, testified that he was a painter by occupation and that he and his wife, on June 13, 1953, were living just across the alley from 1418 South Main Street; that he was familiar with the locality and the streets and sidewalks at that address and that he had had occasion to walk upon the sidewalk in question two, three, or four times a week for ten years prior to June 13, 1953. He further testified that there is a crevice or drop in the sidewalk there of two-and-a-half inches and identified four photographs taken a few weeks after the accident and indicated thereon the crevice he testified about, and his testimony is that this condition had existed for over two years prior to June 13, 1953. These photographs were admitted in evidence, and, when shown to the plaintiff, she indicated on each of them the location of the spot where she fell.

Mamie Galluzzo testified on behalf of the defendant to the effect that she and her husband operated the Galluzzo Grocery at 1418 South Main Street and had operated it seven years prior to June 13, 1953; that the plaintiff was a frequent visitor and patron of the grocery store, coming there three or four times every week; that on the afternoon of June 13, 1953, she came to the store, purchased some groceries and left, later returning to buy some groceries which she had forgotten; that the return trip was made about one-half hour after she bought the first groceries; and that before she came into the store the second time to purchase the items which she had forgotten, she fell. This witness further testified that prior to the time the plaintiff fell, the witness had had no occasion to notice the sidewalk in front of her store, but after plaintiff had fallen she "went out and looked at the sidewalk and saw a little bump. It was about an inch and a half or something like that. I really don't know, 'cause I

76

never measured it. The bump was caused by the fact that the sidewalk was cracked, but I had never noticed it prior to that time."

Joseph Bruno also testified on behalf of the defendant to the effect that he was superintendent of streets of Rockford and that his records did not disclose that any report had ever been made to the city of any defective conditions in the sidewalk in front of 1418 South Main Street.

Other than the plaintiff's testimony as to the injuries she received as a result of this accident and the medical testimony, none of which is abstracted, the foregoing is a fair resume of the evidence found in this record.

In order to sustain the judgment, counsel for appellee cite Franklin v. City of Edwardsville, 4 Ill.App.2d 495; Stevenson v. Byrne, 3 Ill.App.2d 43; City of Mattoon v. Faller, 217 Ill. 273; Village of Clayton v. Brooks, 150 Ill. 97; Ashby v. Irish, 2 Ill.App.2d 9; and White v. City of Belleville, 364 Ill. 577.

In the Franklin case, the court sustained a judgment in favor of the plaintiff, who had only one leg and used two crutches in walking, when he was injured caused by a fall while traveling on a cracked and broken concrete walk when he placed his crutch on a chunk of concrete which tipped under his weight throwing his crutch out, thus causing him to fall.

In Stevenson v. Byrne, 3 Ill.App.2d 43, plaintiff, a tenant in an apartment building, was injured as she was leaving her apartment to go to work. When she reached the front door of the building she found there was no door knob on the door and she put her finger in the hole where the knob should have been, pulled at the door, and when it swung open she stepped into a hole in the cement flooring, tripped and fell through the door onto the outside landing. The court sustained a judgment for the plaintiff and held that plaintiff was not guilty of contributory negligence as a matter of law.

In City of Mattoon v. Faller, 217 Ill. 273, it appeared that the plaintiff stepped on the end of a plank of a wooden sidewalk which was out of repair and in a bad condition and plaintiff knew it was defective. When the plaintiff stepped on this plank, the other end flew up, and in endeavoring to step over that end with his other foot he lost his balance, got his foot caught on the edge of a defective plank and fell receiving serious injuries. The court sustained a judgment for the plaintiff, stating that it is well-settled law in this state that where a man knows of a defect in a sidewalk and walks thereon, his doing so with such knowledge is not negligence per se, as a matter of law, as all the law requires of a man, going upon a public sidewalk with knowledge that it is defective, and with knowledge that there is another way of going, is that he shall be in the exercise of ordinary care for his own safety. The opinion in the Faller case cited Village of Clayton v. Brooks, 150 Ill. 97, and quoted extensively therefrom.

In White v. City of Belleville, 364 Ill. 577, the plaintiff in the trial court recovered a judgment for damages for injuries sustained by her as a result of a fall on a granitoid sidewalk in the City of Belleville. It appeared that the sidewalk, where the accident occurred, had been repaired and that there was a depression in the walk extending nineteen inches north and south and sixteen inches east and west and varying in depth from two to four inches. At the edges of the break in the walk, caused by the detachment of a repaired slab from the main walk, there was a crevice sufficiently wide to permit the heel of a woman's shoe to enter. Plaintiff's testimony was that she walked across or upon the repaired portion of the walk and as she stepped down into the depression, the heel of her shoe dropped into a hole and she was thrown forward and fell upon the street. The Appellate Court held (White v. City of Belleville, 284 Ill. App. 322, 331) that the trial court erred in not directing a verdict for

78

the city because the plaintiff had failed to prove any negligence on the part of the city. The Supreme Court reviewed the record and in reversing the judgment of the Appellate Court held that there was substantial evidence to support the charge that an unsafe condition of the sidewalk existed where the accident occurred.

The facts in the instant case distinguish it from the several cases relied upon by appellee. Here appellee was traveling upon a walk with which she was familiar. It extended east from the street curb to the west wall or west property line of the Galluzzo Grocery. Its width does not appear from the evidence, but we have examined the photographs and they disclose that it is the ordinary concrete walk in common use, cracks appearing thereon at different places and marked off in sections of substantial size. A portion of the west side of one of the middle sections had settled. According to the plaintiff, the result of this settling was to leave the surface of the adjoining section two inches higher than the surface of the portion of the section which settled. According to the testimony of plaintiff's husband, this inequality was two and one-half inches. Mrs. Galluzzo characterized this inequality as "a little bump about an inch and a half or something like that." This condition had existed for at least two years and plaintiff had seen the ridge, that is the edge of the concrete slab that had not settled, on many occasions, had seen it on her previous visit to the store on June 13, 1953, and again upon her return trip just before she fell. Knowing this she placed a portion of her left foot on this ridge and when she did so her foot slipped off the edge from the higher to the lower level and she was unable to retain her balance, fell and was injured.

The question whether an offset in a sidewalk such as disclosed by the evidence in this case is of such a character that danger to a pedestrian from its exist-

79

ence may reasonably be foreseen and anticipated by the city and whether, in permitting this inequality to remain, the city had kept and maintained its sidewalk in a reasonably safe condition for ordinary use by pedestrians exercising due care for their own safety are questions of fact for the jury to determine. It has been held that permitting the existence of substantial differences in the level of adjoining flagging or sections of concrete in a sidewalk is insufficient as a matter of law to support a finding that the municipality was negligent.

In Parker v. City and County of Denver, a Colorado case reported in 128 Colo. 355, 262 P.2d 553, 37 A.L.R.2d 1177, the trial court directed a verdict for the defendant in an action brought to recover damages for personal injuries sustained by the plaintiff when she tripped on a sidewalk made of concrete blocks where the elevation of one block over an adjoining block varied from one-and-a-half to two inches on one side to about one inch on the other side. In reversing the judgment rendered upon a directed verdict for the defendant the court cited numerous cases from other jurisdictions and held that actionable negligence in connection with the maintenance of a sidewalk is a question of fact for a jury's determination when it appears that reasonable and fair-minded men may form different opinions and draw different conclusions from the same undisputed facts. The court overruled two of its previous decisions stating that they were basically wrong in their determination that depressions or elevations constituting actionable negligence may be measured in inches. Following the report of this case in 37 A.L.R.2d, beginning at page 1187 is an annotation which supplements one on the same subject appearing in 119 A. L. R. 161, on the degree of inequality in a sidewalk which makes question for jury or for court as to a municipality's liability.

In City of Chicago v. Norton, 116 Ill. App. 570, it appeared that the plaintiff was walking upon a sidewalk of stone flagging and fell near the middle of the sidewalk at a point where the party line between two adjoining properties if extended would cross the walk. At the curbstone, the walk was level but at the building line it was five inches higher than the adjoining walk on the west. At the point where plaintiff fell, the difference in level was from two and one-half to three inches. In the course of its opinion, the court said that the ground of liability is negligence and that the question presented was whether the fact that one of two adjoining flagstones in a sidewalk was two and one-half or three inches lower than the other is sufficient to charge the city with the result of injuries received by a person who fell while stepping from the higher to the lower level. In holding that the city was not liable the court said (p. 572): "If the existence of a difference in level of three inches between two adjoining pieces of flagging or pieces of plank in a sidewalk may be held to render such sidewalk not reasonably safe and be deemed evidence from which the fact of negligence in respect thereto may be inferred and found, then there is scarcely any sidewalk in any city that is reasonably safe. It is a matter of common knowledge that such differences in level may be found in almost every sidewalk in Chicago and a person walking along a sidewalk will step from a plank or stone three inches above the plank or stone upon which he steps without observing the difference in level. From such a difference in level, danger is not in common experience to be anticipated and a city can only be found guilty of negligence when the defect in a sidewalk was such that a reasonably prudent man should anticipate some danger to persons walking thereon. In our opinion the sidewalk in question was reasonably safe and the defendant, the city of Chicago, was not guilty of negligence in respect thereto."

In Bleiman v. City of Chicago, 314 Ill. App. 471, the plaintiff sought to recover damages for injuries resulting in a fall on a driveway leading from a street over a sidewalk into an adjacent garage. It appeared that the plaintiff, in walking from his car over the plates to the sidewalk, did not notice the difference in level caused by the plates which extended over the curb and the heel of his left shoe caught the plate and he slipped off the plate into the street, a drop of about four inches, resulting in a fractured femur. In reversing a judgment for the plaintiff, the court said: "The controverted issue is whether the driveway, at the place where plaintiff fell, was reasonably safe as a matter of law. Under the well-settled rule in this State, a city can be found guilty of negligence only when the defect in a sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it. This rule was enunciated in the early case of City of Aurora v. Pulfer, 56 Ill. 270, wherein the court held that 'obstructions or defects in the streets or sidewalks of a city, to make the corporation liable, must be of such nature that they are in themselves dangerous, or such that a person, exercising ordinary prudence, can not avoid danger or injury in passing them.'"

In Powers v. City of East St. Louis, 161 Ill. App. 163, the plaintiff, while walking on a granitoid sidewalk, fell and broke her arm and recovered a judgment in the trial court. In reversing that judgment the court reviewed the evidence and held that the city was not guilty of the negligence charged and that the plaintiff was not in the exercise of reasonable care for her own safety at and just before her injury. The court pointed out that the walk where plaintiff was traveling was six feet wide, practically level, but three inches higher at the property line than the adjoining walk and two inches higher than the adjoining walk at the street curb; that plaintiff fell when she did not observe the

82

difference in the height of the levels as she was proceeding along the walk on a clear, light day. In the course of its opinion, the court said (p. 166): "There was nothing inherently dangerous to a traveler in this walk. There was no concealed defect or imperfection in its construction or make-up. For one to pass over it and say that they did not see the incline and difference in levels, is to admit that they did not look at the walk at all, unless their sight be very, very poor. The plaintiff testifies that her sight is not so good as when younger, but that she can see all right; that it was a fine, sunshiny day when she was injured; that if she had looked down at this rise in the walk that she would have seen it; that she was looking ahead; that she didn't look only when she fell; that there was nothing to prevent her from seeing if she had looked, and that if she had looked and known it was there she would not have fallen. How then can it be said that she was in the exercise of ordinary care for her own safety, when added to this evidence is the further fact that she had already just a moment before her injury stepped down from the same higher level to the lower level of the walk twenty-five feet south from the place of her injury? We cannot hold that a walk of two smooth granitoid surfaces built upon two different levels, varying in height of from two to three inches and connected with smooth bevel surfaces, is proven to be unsafe and dangerous to travelers thereon using reasonable care for their own safety simply because some one has been injured by falling on it. . . . No reasonable mind, it seems to us, could foresee that an injury would happen to a traveler thereon while exercising reasonable care. To hold that this sidewalk as constructed was not reasonably safe within the meaning of the law would be virtually to hold that all walks should be smooth and level. This would require of cities perfection in the construction of their walks and would make them virtually insurers against all

83

damages; but the law of this State does not require such exactions, and our courts have repeatedly refused to hold cities and villages liable in such cases as this one. When a city or village has exercised reasonable care and prudence to construct its sidewalks in a reasonably safe condition for travelers using reasonable care for their safety, it has done all the law required of it in that regard. It is not required to foresee and provide against every possible danger or accident that may occur."

In our recent case, Shepard v. City of Aurora, 5 Ill.App.2d 12, we had occasion to refer to many of the authorities involving segments of a sidewalk having a difference in levels and affirmed the judgment for the plaintiff for injuries resulting from a fall, the court stating that it was a fair inference from the evidence that the plaintiff fell when her shoe did not clear a one and one-half inch raise as she walked along a sidewalk containing a five-foot-square trap door.

██ Whether inequalities in the surface of a sidewalk constitute actionable defects depends upon their character, extent and surrounding circumstances. The test ordinarily is whether they are of such magnitude or extent as to be likely to cause injuries to travelers who are proceeding with due care. Liability has frequently been imposed for injuries resulting from such inequalities or structural defects in the surface of a sidewalk. Slight depressions, holes, and other inequalities in the sidewalk have been held not to constitute actionable defects. A material or substantial difference in height between adjacent sections of a walk may render the municipality liable for injuries to pedestrians who stumble over it, but slight differences in level of adjacent portions will not have that effect. (25 Am. Jur. Highways, sec. 488, pp. 774–6.) The cases examined cannot be harmonized. What is considered a slight and trivial inequality by some courts is held to be a substantial inequality by others. We

84

are inclined to the view expressed by those courts which hold that actionable negligence in such cases cannot be measured in inches, and that the character of the defect and surrounding circumstances are to be taken into consideration, and that it is ordinarily a jury question. In the view we take of the record in the instant case, it is unnecessary for us to determine whether appellant was or was not guilty, as a matter of law, of the negligence charged.

█ From the undisputed facts as disclosed by the record in this case, plaintiff is precluded from a recovery because as a matter of law she was guilty of contributory negligence. As said in Powers v. City of East St. Louis, 161 Ill. App. 163, there was nothing inherently dangerous to a pedestrian using this walk, no concealed defect or imperfection in its construction or makeup. How can it be said upon this record that plaintiff was in the exercise of ordinary care for her own safety when, knowing the conditions that then existed, she placed her foot where she intended to place it, aware that when she did so it would rest upon the ridge of a slab of concrete which was at a higher level than the section of concrete which she was traversing? Evidently, she did not place her foot far enough upon the adjoining section, and the weight of her body caused her foot to slip and she lost her balance and fell. There was no foreign substance on the ridge with which her shoe came in contact to cause it to slip, and the surface was in the same condition as the surface of the section upon which her other foot was resting. Had plaintiff supposed that there was any danger she would have stepped somewhere else or exercised such precaution as would have prevented her falling. She was injured because she failed to place her foot securely on the section of concrete she proposed to cross. Placing her foot where she did resulted in her fall and, therefore, proved dangerous to her. By so doing, she

85

therefore failed to heed visible danger, and failing to heed visible danger precludes her from recovering.

 Contributory negligence is the neglect of the duty imposed upon everyone to observe ordinary care for their own safety. (38 Am. Jur. Negligence, sec. 181, p. 859.) Ordinary care has been defined to be that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. (Austin v. Public Service Co. of Northern Illinois, 299 Ill. 112, 120.) The law is that where one knows of a defect in a sidewalk and walks thereon, his doing so with such knowledge is not negligence per se, as matter of law. All that the law requires of a person going upon a public sidewalk with knowledge that it is defective and with knowledge that there is another way of going is that he shall be in the exercise of ordinary care for his own safety. (City of Mattoon v. Faller, 217 Ill. 273, 282.) The law is, too, that the care which a plaintiff, in a case of this character, is required to exercise is in proportion to the danger involved. (38 Am. Jur. Negligence, sec. 190, p. 867.) The law imposes upon a person, sui juris, the obligation to use ordinary care for his own protection, the degree of which is commensurate with the dangers to be avoided, and one who voluntarily and unnecessarily assumes a position of danger, the hazards of which he understands and appreciates, cannot recover for an injury from a risk incident to the position. (38 Am. Jur. Negligence, sec. 182, p. 859.)

In the instant case there is no conflict in the evidence as to what plaintiff did at and before the time she fell. It does not appear that she was distracted by the influence of any unusual or extraordinary conditions. She was familiar with the imperfections of the sidewalk upon which she was traveling. She had a perfect legal right to step where she pleased. She chose to place her foot on the ridge of this section of elevated concrete. Her experience must have taught her that if she did

so and did not obtain a secure footing and then lifted her other foot preparatory to taking another step she would lose her balance, and if she was unable to regain her balance she would fall. She, therefore, in so doing, voluntarily and unnecessarily assumed a position of danger, because what happened is what an ordinarily prudent person knew would happen, and, in so doing, she must be held to be guilty of contributory negligence as a matter of law, which precludes a recovery.

The judgment of the Circuit Court of Winnebago County is reversed.

Judgment reversed.

EOVALDI and CROW, JJ., concur.