(No. 44828.

HENRY S. NOWICKI, Appellee and Cross Appellant, v. UNION STARCH AND REFINING COMPANY, Appellant and Cross Appellee.

*Opinion filed January 26, 1973.*

GOLDENHERSH and WARD, JJ., dissenting.

BERNARD and DAVIDSON and BURTON C. BERNARD, of Granite City (EDWARD MOORMAN, of counsel), for appellant and cross-appellee.

CHAPMAN, TALBERT & CHAPMAN, of Granite City (MORRIS B. CHAPMAN, of counsel), for appellee and cross-appellant.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Henry S. Nowicki, brought an action in the circuit court of Madison County to recover damages from Union Starch and Refining Company, the defendant, for personal injuries he received on the defendant's premises. The jury returned a verdict for the plaintiff in the amount of $65,000, and judgment was entered on the verdict. The Appellate Court, Fifth District, one judge dissenting, reversed the judgment and remanded the cause for a new trial. (1 Ill. App. 3d 92.) Both parties filed petitions for leave to appeal, and after the appellate court granted a certificate of importance, pursuant to Rule 316 (50 Ill.2d R. 316), the petitions for leave to appeal were dismissed as moot.

Before we consider the merits of the case, a proce-

dural matter should be mentioned. In its certificate of importance the appellate court said: "The ground for so certifying is that this case involves the following question", and then stated a lengthy question. In their briefs the parties have referred to this statement of the appellate court as the "certified question" or "certified questions." Rule 316 of this court and its predecessors have long provided for the issuance of a certificate of importance by a division of the appellate court, but the certification of a particular question or questions by the appellate court is neither necessary nor appropriate.

The plaintiff's employer, Minnette Boiler and Sheet Iron Works, had entered into a contract with the defendant to fabricate and install two stainless steel tanks in the defendant's plant. The work was being done in a building known as the "steep house," which was about 100 feet long and 40 feet wide, and contained a number of large tanks used for the purpose of "steeping" corn in order to produce starches, syrup, glucose, caramels, textiles and paper. Each of the new tanks was to have a capacity of 3500 bushels and was to be 15 feet in diameter and 47 feet in circumference.

The new tanks were to be constructed in accordance with specifications prepared by Union. The specifications provided that the work was to be done while the plant was in operation, and that the bidders were to "examine site and all conditions thereon. Proposal shall take into consideration all such conditions as may affect Contract work." The specifications further provided: "The Contractor shall provide appropriate barricades and safety devices to protect plant personnel, as well as his own personnel, where such are necessary." The proposal submitted by Minnette Boiler and Sheet Iron Works, the successful bidder for that portion of the total proposal which embraced the fabrication and erection of the two tanks in question, provided that the tanks would be fabricated by a

subcontractor. The proposal stated that the time that Minnette would require to complete the work, based upon a 40-hour work week, was eight weeks.

The circumstances directly relating to the plaintiff's accident were thus described by the appellate court (1 Ill. App. 3d 92, 94):

"The evidence further showed that due to a hailstorm in April, 1964, the roof on the steep house was damaged and that when it rained, the roof leaked in many places and particularly over the area where tanks seven and ten were being erected. In between the tanks were steel I-beams which ran from the east wall to the west wall in the steep house which were about seven and one-half inches wide and over the I-beams was a catwalk which did not extend completely to the wall of the building.

"The plaintiff, a boilermaker for twenty-two years, commenced working in the defendant's plant about the middle of May, 1965, and had been working about five weeks before June 22, 1965, the date of the incident in question. In the afternoon of June 22, 1965, the plaintiff was instructed to fit a roof on to tank number seven. The roof consisted of two pieces of steel and weighed about one thousand pounds. The pieces for the roof were picked up by a chain fall from the top of tank number eight and moved over to tank number seven. It was necessary to use the I-beam on both sides of the tank to put on the roof. The plaintiff walked out from the catwalk onto the I-beam and was using a sleever to pry the roof up to fit on the lugs so it could be welded. His foot slipped out from under him and he fell on to a chute which was on top of the old wooden tank injuring his left knee.

"It is not controverted that the plaintiff saw

the roof leaking and saw water on the I-beam before he went out on it and that his shoes were not dry as he walked out on the I-beam."

The plaintiff's complaint against this defendant was in two counts. Count I alleged that the present defendant negligently failed to provide the plaintiff with a safe place to work; negligently "permitted the roof of said premises wherein said work was being accomplished to leak, and consequently for rain to fall onto the portion of the premises upon which Plaintiff was standing, and to cause same to be slick and hazardous, causing him to slip and fall and injure himself as aforesaid"; and negligently "caused the Plaintiff, in the course of his work, to stand above an open and dangerous area without proper guards or protection to prevent his falling therefrom." Count II charged the defendant with a violation of the Structural Work Act "in that it failed to furnish Plaintiff a suitable and proper scaffolding upon which to work." At the conclusion of the plaintiff's evidence the court granted the defendant's motion for a directed verdict as to count II on the ground that "the plaintiff fell from a permanent part of the building in question and not from a scaffold." This ruling has not been challenged.

The case was submitted to the jury upon count I of the complaint under instructions which did not mention either the fact that the plaintiff was the employee of an independent contractor, or the element of supervision or control of the plaintiff in the course of his work. The defendant's tendered instructions concerning assumption of risk were refused.

The position taken by the trial court in its instructions to the jury, and advocated by the dissenting judge in the appellate court, would broaden the scope of the duty owed by one in possession of property to an independent contractor and his employees to such a degree that the Structural Work Act would be supplanted by the common-law duty thus created. In our opinion the appellate

court properly rejected that position and properly relied upon the proposition asserted in *Calvert v. Springfield Electric Light and Power Co. (1907), 231 Ill. 290 293.* "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who are likely to act upon such invitation, and if there are hidden dangers upon the premises he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an independent contractor or his servants while working upon his premises." See also *Craig v. Olin Mathieson Chemical Corp. (7th Cir. 1970), 427 F.2d 962, cert. denied, 400 U.S. 964, 27 L. Ed. 2d 383, 91 S. Ct. 365.*

The appellate court, however, remanded the cause for a new trial, and this disposition is challenged by the defendant on the ground that its motion for judgment *n.o.v.* should have been allowed. The plaintiff argues that, "Where the defendant, as here, not only owned the premises but retained supervision of the work and work area, it had a duty to furnish plaintiff with a safe place to work irrespective of whether the defect was latent or the knowledgibility [*sic*] of it by either party." To establish the defendant's control of the work, the plaintiff first points to the provision of the contract that the work was to be done while the plant was in operation. When the plant was operating, the floor area was wet. It does not appear, however, that the condition of the floor had anything to do with the plaintiff's injury.

The plaintiff also asserts that the defendant had an engineer supervising the work. The testimony relied upon to sustain this assertion, however, goes no further than to show that kind of supervision on the part of the defendant

which would be necessary to insure that the work was done properly. (*Cf. Larson v. Commonwealth Edison Co. (1965), 33 Ill.2d 316.*) Moreover, the question and answer primarily relied upon by the plaintiff to show the defendant's control of the work, failed to do so. That question, like a great many others put by counsel for the plaintiff, contained so many facets as to be misleading and to render the answer so ambiguous as to deprive it of significance. The question, put to an engineer for the defendant, was: "That was, as you say, something in connection with some other involvements? You did look at this from time to time, but you left the actual supervision and direction of it to Lyons and/or Oakes, is that correct?" The answer was, "Yes, sir. But mostly Mr. Lyons."

William Noe, the foreman for the plaintiff's employer, Minnette, testified that scaffolding, both tubular and other types which he described, had been used on the job, and was available at the time of the plaintiff's injury. It would have taken, he testified, three to four hours for two men to get into the area from which the plaintiff fell and build scaffolding. He testified that it was he who gave the plaintiff the job to do, and that he himself would not ordinarily put scaffolding on the beam from which the plaintiff fell. His testimony was:

"Q. Now Mr. Noe who decided that Mr. Nowicki would work on the I-beam?

A. I give the man the job to do. As to deciding whether I told him—I didn't directly tell him to get on the beam. I might have suggested that he work off the beam and he probably used his own judgment on it because I would have expected to do myself if I was present."

There is in this case no evidence tending to show that the defendant interfered with the actual conduct of the work being done by the independent contractor, or retained control of operating details. We are therefore of the opinion that the evidence, considered in its aspect

most favorable to the plaintiff, so overwhelmingly favors the defendant that a verdict for the plaintiff could never stand. *Pedrick v. Peoria and Eastern R.R. Co. (1967), 37 Ill.2d 494.*

The judgment of the appellate court is therefore reversed and the cause is remanded to the circuit court of Madison County with directions to enter judgment for the defendant.

*Reversed and remanded, with directions.*

MR. JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent from the majority opinion on two grounds, one procedural and the other a matter of substance.

First, I do not agree that when the appellate court issues a certificate of importance "the certification of a particular question or questions *** is neither necessary nor appropriate." Section 4 of article VI of the constitution of 1970 provides: "Appeals from the Appellate Court to the Supreme Court are a matter of right *** if a divison of the Appellate Court certifies that a case decided by it involves a question of such importance that the case should be decided by the Supreme Court." In view of the power vested in and the responsibility imposed upon the appellate court by this provision I consider it not only appropriate, but constitutionally mandated, that it specify the question which in its judgment should be reviewed by this court. The certification, of course, neither limits the scope of this court's review (*Schatz v. Abbott Laboratories, Inc., 51 Ill.2d 143*) nor requires that we find the question certified to be the controlling issue in the case, but it is of inestimable assistance in our understanding of why the certificate of importance was granted.

In reaching its decision on the merits, the majority fits this case into the procrustean bed of the "scope of the duty owed by one in possession of property to an independent contractor and his employees," and in so

doing ignores long-established rules which determine whether the conduct of the parties was negligent or contributorily negligent. The majority, without considering the questions of negligence or contributory negligence, arbitrarily holds that the defendant owed no duty to the plaintiff because the hazardous condition allegedly created by defendant's negligence was not latent or hidden. A review of the pertinent authorities demonstrates clearly the error of this conclusion.

The record shows that the roof over the area where plaintiff was required to work had been damaged by hail approximately 13 months prior to the date on which plaintiff was injured, that when it rained the roof leaked and that the I-beam on which plaintiff was standing at the time he was injured was wet. It may be, as stated by the majority, that "It does not appear *** that the condition of the floor had anything to do with the plaintiff's injury," but the same statement is not true of the condition of the I-beam, and it is not disputed that the wet I-beam was the only place provided by either defendant, or plaintiff's employer, on which plaintiff could stand while he performed his work. Applying the definition of negligence embodied in Illinois Pattern Instructions (10.01) it is obvious that whether the defendant discharged its duty owed plaintiff as an invitee was a question of fact for the jury.

The holding of the majority opinion apparently results from the erroneous conclusion that because the hazardous condition was apparent, thus obviating the necessity for warning the plaintiff of its presence, defendant was somehow relieved of the duty to maintain its premises in a safe condition. This is patently wrong. Although the apparency of the hazardous condition was relevant to the questions of whether defendant owed a duty to warn of its presence and whether plaintiff was contributorily negligent, it did not serve to relieve the defendant of the duty to maintain its premises in a safe condition.

The majority opinion is tenable only if it can be held

that plaintiff's conduct was contributorily negligent as a matter of law, and to so hold would be violative of rules enunciated in our earlier opinions. This court has held that negligence and contributory negligence are measured against the conduct of a reasonably careful person under circumstances similar to those shown by the evidence. Negligence and contributory negligence are the composite of the experience of the average man (*Keating v. Jones Development Co. (5th cir.), 398 F.2d 1011*) and should, ordinarily, be left to jury determination. The court has consistently held that the presence of an apparent defective or hazardous condition is a circumstance to be considered in determining whether a plaintiff was contributorily negligent.

In *Pauckner v. Wakem, 231 Ill. 276,* the plaintiff, an employee of the Chicago Tribune Company, was sent to the defendants' warehouse to obtain certain machinery stored there, and while in the warehouse he fell into an unprotected elevator shaft. The evidence showed that the area adjacent to the elevator shaft was dimly lighted and the entrance to the area was unguarded. In rejecting the defendants' contention that the trial court should have directed a verdict because plaintiff was guilty of contributory negligence the court said: "Appellants' argument upon this point is, that if the light was sufficient in the passway to enable appellee to see the elevator shaft he should have used his eyes and avoided the danger. If it was too dark for him to see, they say he should not have gone along a dark and unknown passway without a light. We are of the opinion that under the evidence it was a proper question for the jury to determine whether appellee was guilty of contributory negligence." 231 Ill. 276, 282-3.

In *Swenson v. City of Rockford, 9 Ill.2d 122, 127,* in rejecting the city's contention that plaintiff was guilty of contributory negligence because she had walked upon a sidewalk in which she had knowledge of defects, the court said:

"The use of a defective sidewalk by a person who has knowledge of the defect is not contributory negligence *per se,* and if, while walking upon that sidewalk, such person is in the exercise of ordinary care for his or her safety, there may be a recovery in case of an injury. (*Wallace v. City of Farmington, 231 Ill. 232; City of Mattoon v. Faller, 217 Ill. 273.*) Ordinary care has been defined to be that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. *Austin v. Public Service Co. of Northern Illinois, 299 Ill. 112.*

In *Village of Clayton v. Brooks, 150 Ill. 97,* this court said: 'The law is, we think, well settled, that knowledge of the defect in the sidewalk, by the person injured, before he goes upon the same or before injury, does not *per se* establish negligence on his part. *** "It is plain that one may exercise due care with full knowledge of the danger to which he is exposed or to which he lawfully exposes himself. This certainly is not contributory negligence." ' In the same case (p. 106,) it was said, quoting from Sherman & Redfield on Negligence: 'The mere fact that a traveler is familiar with the road, and knows of the existence of a defect therein, will not impose upon him the duty to use more than ordinary care in avoiding it. *** Such knowledge is a circumstance, and perhaps a strong one, but it should be submitted, with the other facts of the case, to a jury, for them to determine, whether, with such knowledge, the plaintiff exercised ordinary care in proceeding on a way known to be dangerous, or, in proceeding, used ordinary care to avoid injury.' "

The record shows that the plaintiff, employed by a contractor engaged by defendant to perform certain work,

was instructed by his foreman to do a job which according to the testimony was to be done while standing on the wet I-beam. No scaffolding was provided for the reason that the placement of scaffolding would require the efforts of two men for three or four hours. Whether plaintiff, in going upon the wet I-beam, was guilty of contributory negligence was an issue of fact for the jury and should not by arbitrarily decided by this court on the ground that he knew the I-beam was wet. The fact that it was wet was a circumstance to be considered by the jury in deciding the issue of fact presented by the evidence. The able trial judge, after adequate instruction on the issues, properly submitted the matter to the jury, and to deprive this plaintiff of his recovery on the grounds set forth in the majority opinion is clearly contrary to established principles of law.

MR. JUSTICE WARD joins in this dissent.