HELEN RYAN, Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant and Third-Party Plaintiff-Appellant.—(MARSHALL FIELD & Co. et al., Third-Party Defendants-Appellees.)

(No. 58669; 

First District (1st Division)—May 5, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

Philip H. Corboy and Paul B. Episcope, for appellee Helen Ryan.

Kirkland & Ellis, of Chicago (Donald J. Duffy, Gary M. Elden, and James E. Dahl, of counsel), for appellee Marshall Field & Co.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard, of counsel), for appellee Anthony J. Bongiorno.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Helen M. Ryan (plaintiff) brought suit against City of Chicago for personal injuries suffered as a result of a fall on a sidewalk. The City filed a third-party complaint (later amended) against Marshall Field & Company, Pepper Construction Company and Anthony J. Bongiorno, doing business as N. J. Bique. The case was tried before a jury. The trial court sustained the motions of Field and Pepper and directed verdicts in their favor on the third-party complaint. The jury returned verdicts in favor of plaintiff and against the City in the amount of $62,000 and in favor of Bique and against the City on the latter's amended third-party complaint. The jury also returned a special verdict finding the City guilty of negligence that was the proximate cause of plaintiff's injuries. The City appeals.

In this court, the City urges reversal of the judgment in favor of plaintiff for the sole reason that she failed to sustain the burden of proving her freedom from contributory negligence so that the court should have directed a verdict in favor of the City on plaintiff's complaint. Alternatively, as regards the liability of the third-party defendants, the City urges that the court erred in directing a verdict in favor of the third-party defendants Field and Pepper because the negligence of the City, if any, was passive while these third-party defendants were guilty of active negligence so that the City's motion for judgment in its favor should be sustained. Finally, the City urges that the court erred in refusing to enter judgment in favor of the City and against Bique because the evidence overwhelmingly showed that Bique performed the defective work which caused plaintiff's injuries. The third-party defendants Field and Pepper support the judgment in their favor on the City's third-party complaint on the theory that neither of them performed any of the work upon the allegedly defective sidewalk but that all of the work was done by Bique as an independent contractor; and, in any event, that any negligence charged against the third-party defendants would

necessarily be passive and on the same qualitative level as that of the City so that the directed verdicts were proper. The third-party defendant Bique takes the position that the factual determination by the jury in his favor is not open to question and that as a matter of law the City itself was guilty of active negligence so that it was not entitled to indemnity from Bique.

The various issues categorize into three groups which will be separately considered from a factual as well as from a legal point of view.

## I.
### The Issues Between
### Plaintiff and the City.

As indicated, the sole issue raised by the City as regards its liability to plaintiff is contributory negligence. The evidence shows that on June 4, 1968, plaintiff suffered a fall upon the public sidewalk at the northeast corner of State and Washington Streets, in Chicago. Plaintiff, a woman some 68 years old, was standing in a group of people rather close to the curbline about to cross Washington Street in a westerly direction. As the traffic light became green, plaintiff started to walk forward and she fell to the ground. She was wearing high-heeled shoes and one of her heels became stuck in some tar, or tarlike material, which had apparently been applied to fill some cracks in the sidewalk.

The strips of tar were approximately 2 to 3 inches wide. At one point, this substance was about one-half inch higher than the level of the sidewalk. There is testimony that this tar appeared to be fresh, shiny and rather soft. Immediately after plaintiff fell, a witness noticed one area of the tar had been pulled up and had a heelmark in it. The plaintiff had called this to her attention after the fall and told her that she had caught her heel in it. The witness did not notice the tar previously. A police officer on duty at the corner noticed new tar in the sidewalk cracks adjacent to where plaintiff fell. On that day, there were no barricades or warning signs in the area. The officer estimated that during lunch hours from 100 to 200 pedestrians might cross the streets on that corner at each change of the traffic lights.

Plaintiff testified that it was her custom to go to the downtown area most Tuesdays for some shopping. She generally went to the Field store on those days, using the entrance on the corner of State and Washington Streets. On this date, she went into the Field store, made a purchase and then left to go to another department store. She then returned to the Field store to have her lunch, using the same entrance. The fall occurred in the afternoon when she left the Field store after lunch.

Plaintiff further testified that she had previously noticed tar marks

on the sidewalk in the area. On the day in question, she failed to see the tar before she stepped on it and fell. She did not look down specifically and was not looking at the ground before she fell. She did not see anything on the sidewalk before the fall. The area was crowded with pedestrians and she waited about 30 seconds for the traffic light to change. The weather was clear on that day. After her fall, she noted the tar and it looked fresh and shiny. She did not notice anything unusual until she tried to walk, could not do so because her heel was caught and she fell. No one pushed her before she fell. From a stretcher, she saw that the tar looked shiny, fresh and soft. At the hospital, she noticed tar on the heels of both of her shoes. They were only one week old.

The City urges strongly that a person may not knowingly expose himself to danger and then recover damages for an injury which he could have avoided with reasonable precaution. (*Carter v. Winter*, 32 Ill.2d 275, 284, 204 N.E.2d 755, *cert. denied*, 382 U. S. 825.) The City also urges the general principle that, where a plaintiff is guilty of contributory negligence, he cannot recover on the theory of negligence of the defendant. (See *Hermann v. City of Chicago*, 16 Ill.App.3d 696, 701, 306 N.E.2d 516.) However, we need not reason from general principles in this type of case since there is specific authority governing the situation. Perhaps the most frequently cited decision upon this precise point is *Swenson v. City of Rockford*, 9 Ill.2d 122, 136 N.E.2d 777. There, plaintiff sued for personal injury sustained in a fall upon an allegedly defective sidewalk. She had noticed a long crack in the sidewalk on other occasions. The condition in question had existed for more than 2 years and plaintiff had passed it some 4 or 5 times a week for 10 years. The jury returned a verdict in favor of plaintiff. The appellate court reversed, finding plaintiff guilty of contributory negligence as a matter of law. The supreme court affirmed the original judgment. The essence of the decision, decisively applicable to the case before us, is (9 Ill.2d 122, 127):

> "The use of a defective sidewalk by a person who has knowledge of the defect is not contributory negligence *per se*, and if, while walking upon that sidewalk, such person is in the exercise of ordinary care for his or her safety, there may be a recovery in case of an injury. (*Wallace v. City of Farmington*, 231 Ill. 232; *City of Mattoon v. Faller*, 217 Ill. 273.)"

One of a number of persuasive authorities following *Swenson* and reaching the same conclusion is *Scoggins v. Village of Hartford*, 128 Ill. App.2d 228, 262 N.E.2d 97.

■■■ Thus it is apparent that the evidence here does not establish contributory negligence of plaintiff as a matter of law. We cannot say that all of the evidence when viewed in its aspect most favorable to

plaintiff so overwhelmingly shows contributory negligence that no verdict in favor of plaintiff based on that evidence could be permitted to stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504. See also *Hardware State Bank v. Cotner*, 55 Ill.2d 240, 246, 302 N.E. 2d 257.) There were many circumstances shown by the evidence here which would tend to convince the trier of fact that plaintiff was not guilty of contributory negligence. The evidence shows the crowded condition of the northeast corner of Washington and State Streets during the lunch hour. It would be most unusual to find any pedestrian in that situation who kept his eyes constantly adverted to the sidewalk below. In a situation of this type, reasonable persons might well differ on the issue of contributory negligence. Therefore, determination of whether plaintiff was guilty of contributory negligence rested with the trier of fact. (*Union Automobile Indemnity Ass'n v. Drew*, 3 Ill.App.3d 1102, 279 N.E.2d 776.) The jury arrived at its verdict upon a record apparently free from trial error. We cannot say that their verdict is contrary to the manifest weight of the evidence. (*American National Bank v. Wisniewski*, 18 Ill.App.3d 961, 969, 310 N.E.2d 834.) In our opinion, the trial court acted properly in denying the City's motion for judgment in its favor notwithstanding the verdict.

## II.
### The Issues Between the City and Third-Party Defendants Field and Pepper.

The City seeks indemnity from third-party defendants Field and Pepper upon the theory that the City's negligence, if any, was passive and that of the two third-party defendants was active. The basic theory of indemnity in this type of case need not be repeated here. (*Carver v. Grossman*, 55 Ill.2d 507, 510, 511, 305 N.E.2d 161.) As noted, the court directed a verdict in favor of both of these third-party defendants and against the City on the City's third-party complaint as amended.

The evidence shows that plaintiff fell upon a sidewalk of the City of Chicago. Beneath this area there is a so-called vault which is owned and used by Field as a portion of its store activity. Since the entire sidewalk area is in smaller sections with joints between, cracks and defects would permit leakage of water to the space below. This requires maintenance from time to time, consisting of the application of caulking. The evidence shows that Field itself does not hire employees for direct performance of this type of work. All necessary construction and repair work in and about the Field store is performed by Pepper as contractor. This includes the sidewalk caulking in the area in which plaintiff fell. The agreement between Field and Pepper for all of this maintenance

work has been described by the testimony as an exclusive contract. As various work is completed, bills are sent to Field by Pepper for labor and materials and a profit. The evidence is that Field does not exercise any supervision over the contractor as to the manner in which the work is to be done or the method used.

As regards caulking of the sidewalk area above the vault, none of this work is done by Pepper. It is always subcontracted by Pepper to the remaining third-party defendant, Anthony J. Bongiorno, doing business as N. J. Bique. Pepper used his services exclusively for the caulking work at Fields. The charges made by him were always paid initially by Pepper for which it was later compensated by Field. As regards the relationship between Pepper and Bique, Pepper did not direct Bique in the method or manner of doing the work and did not in any manner supervise the performance. Bique would generally obtain the permits from the City for work on the sidewalk. Pepper never specified the type of material that should be used in sidewalk work but left that entirely to Bique. Pepper customarily caused an inspection of the work area to be made and this would usually be done each morning after completion of work during the preceding night. Caulking on the Field sidewalks was generally done at night because of the heavy pedestrian traffic during the day. On occasion a representative of Pepper would point out to Mr. Bongiorno (Bique) where there were areas which required caulking. The evidence is that if the Pepper representative found upon inspection that the work had been unsatisfactory, he would have required Bique to do the work again, but the work had always been satisfactory and "a good job."

In our opinion, as a matter of law, the City is not entitled to indemnity from either Field or Pepper. As regards Field, it entrusted all of its work of this nature to Pepper as an independent contractor. Field did not retain any control over any part of the work. The same situation is correct as regards the relationship of Pepper to the work. Pepper did not in any manner control or supervise the performance of the work by Bique. All that Pepper did at any time was to inspect the work after completion to make sure that it had been performed in a good and workmanlike manner. There is no written contract between any of these parties. However, the past performance by them of their respective duties is a clear indication of the method and manner in which they operate. The sole connection that Field had with any of the work in question was retaining Pepper to handle all of its repair work. Similarly, the sole connection that Pepper had was to retain the services of Bique as a subcontractor. Neither Field nor Pepper exercised control of any kind over the performance of the actual work by Bique.

Analysis of this evidence as regards the liability of Field and Pepper

shows, in our opinion, that it is completely one-sided with no evidence to the contrary. All of the evidence leads to the conclusion that neither Field nor Pepper controlled the method or manner in which the actual caulking was accomplished by Bique, as contractor. Neither of them exercised any authority over the actual performance of the work. Field never inspected the work after completion. Pepper inspected the work from time to time but only for the purpose of making sure that it had been properly done so that Bique was entitled to compensation. It follows necessarily that, if Bique was negligent in performing the work, so as proximately to cause the injury to plaintiff, this fact in and of itself does not establish negligence on the part of Field or Pepper in connection with plaintiff's injuries.

■■ Under the law of Illinois, in a situation of this type, the owner or other person who retains the services of an independent contractor may be liable for negligent performance of the work only if he "retains the control of any part of the work  *,  *  *." (Restatement (Second) of Torts § 414 (1965), as cited in *Weber v. Northern Illinois Gas Co.*, 10 Ill. App.3d 625, 638, 295 N.E.2d 41.) The comment contained in the Restatement amplifies this slightly by stating that the person who employs an independent contractor is subject to liability for the negligence of the employees of the contractor only if he "retains control over the operative detail of doing any part of the work  *  *  *."

The same principle applies with equal force to Pepper as it does to Field. Pepper retained the services of Bique as an independent contractor. Pepper neither retained nor actually exercised any control over the operative detail of any part of the performance of the work by Bique. The legal relationship between Pepper and Bique was equivalent in this regard to the relationship between Field and Pepper. The record does show that Pepper caused inspection to be made of the work actually performed by Bique. However, this does not alter the legal relationship between these parties because there is no contradiction of the fact that this inspection was limited to the purpose of insuring that the work was properly done. (See *Nowicki v. Union Starch & Refining Co.*, 54 Ill.2d 93, 98, 99, 296 N.E.2d 321. To the same effect, see *Hill v. Natural Gas Pipeline Co.*, 11 Ill.App.3d 555, 297 N.E.2d 243.) In a rather similar situation involving employment of an independent contractor, this court held that the test of the relationship of master and servant is whether the master retained by the contract between them the right to control the manner of doing the work. In the case before us, no such control was ever exercised and there is no evidence that it ever existed. Note also in *Hill* that the right of inspection exercised by the employer of the contractor was "simply sound business practice" so that the employer could assure "itself

that it got what it was paying for." (11 Ill.App.3d 555, 558.) It follows necessarily that neither Field not Pepper was guilty of negligence and neither was liable to indemnify the City even if it be assumed that negligence by Bique was the proximate cause of plaintiff's injuries.

The result of no liability on the part of Field or Pepper to indemnify the City thus correctly reached by the trial judge is supportable upon another equally valid analysis.

■■ The duty of the City, in the case before us, rests primarily upon inspection of the sidewalk. The jury found specifically that the City was guilty of negligence which proximately caused the injury. If so, the liability of the City resulted from failure to inspect. Assuming that Field or Pepper owed any duty to plaintiff, that duty also would rest upon inspection. In other words, the qualitative degree of the negligence of the City would be equivalent to that of Field and Pepper. The supreme court has held that where two joint tort-feasors owed plaintiff the same duty which both breached in the same manner, there can be no total shifting of responsibility from one to the other and thus no right of indemnity exists. (See *Harris v. Algonquin Ready Mix, Inc.*, 59 Ill.2d 445, 449; 322 N.E.2d 58, quoting from *Carver v. Grossman*, 55 Ill.2d 507, 513, 305 N.E.2d 161, which in turn cites *Chicago and Illinois Midland Ry. Co. v. Evans Construction Co.*, 32 Ill.2d 600, 208 N.E.2d 573.) It follows that the trial court acted properly in directing verdicts in favor of Field and Pepper on the amended third-party complaint of the City.

### III.
### The Issues Between the
### City and Bique.

As regards the liability of Bique to indemnify the City, we have a conflict in the testimony regarding whether the application to the sidewalk of the tar, or other substance, which caused plaintiff's injuries, was actually performed by Bique. The City takes the position in its brief that an invoice dated July 12, 1968, was issued by Bique to Pepper for caulking done at the Washington Street curbline where plaintiff fell. The City urges that testimony by Anthony Bongiorno indicated that the bill was for work done prior to that date and that plaintiff was injured on June 4, 1968.

Contrary to this statement, Bique and the other third-party defendants take the position that the invoice did not refer to work done by Bique near the curb of Washington Street where plaintiff fell but instead had reference to work done on the building line. The invoice itself has not been made a part of the record. The testimony by Bongiorno is clear and definite that this invoice was issued for caulking done at "the build-

ing line." In addition, at another point in his testimony, the witness Bongiorno was shown a photograph which apparently reflected the sidewalk along the curbline and he testified that he knew definitely that he did not do the caulking work shown in the photograph. He testified that he eliminated unevenness between two pieces of concrete by the use of gravel and the photograph in question did not show that type of work.

In our opinion, this conflicting evidence raised a clear-cut issue of fact for resolution by the jury. The jury heard the evidence and arguments of counsel and apparently decided that the work had not been done by Bique. We cannot substitute our judgment for that of the jury. We cannot say that the verdict of the jury in this regard is against the manifest weight of the evidence. (*Isabelli v. Cowles Chemical Co.*, 7 Ill.App.3d 888, 897, 289 N.E.2d 12.) Under this analysis we need not consider the additional argument by Bique that the City is an active tortfeasor and therefore is not entitled to indemnity.

In our opinion, the able trial judge had no alternative but to submit the case to the jury for their verdict. The trial was apparently quite free from error as no other points have been raised for our consideration. The various judgments appealed from are accordingly affirmed.

Judgments affirmed.

EGAN and SIMON, JJ., concur.