ROSE B. STACH, Plaintiff-Appellee, *v.* SEARS, ROEBUCK AND CO., Defendant-Appellant.—(SEARS, ROEBUCK AND CO., Third-Party Plaintiff-Appellee, *v.* OTIS ELEVATOR CO., Third-Party Defendant-Appellant.)

First District (5th Division)    No. 80-82

Opinion filed November 30, 1981.

398

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Arthur L. Klein, Paul L. Leeds, and Edward H. Salomon, of counsel), for appellant Sears, Roebuck and Co.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Charles P. Menges, Robert S. Soderstrom, and James P. DeNardo, of counsel), for appellant Otis Elevator Co.

Rolland H. Stimson, Ltd., of Chicago (Rolland H. Stimson, of counsel), for appellee Rose B. Stach.

JUSTICE MEJDA delivered the opinion of the court:

Sears (defendant) appeals from the trial court's denial of its motion for judgment against plaintiff notwithstanding the verdict (*n.o.v.*) or, in the alternative, for a new trial on plaintiff's claim. Otis (third-party defendant) appeals from the granting of Sears' motion for judgment *n.o.v.* against Otis on its third-party complaint, denial of Sears' motion for judgment *n.o.v.* against plaintiff, and, alternatively, the failure to grant a new trial on plaintiff's claim against Sears.

The issues presented are whether the trial court erred: (1) in allowing plaintiff to amend her complaint to allege an entirely new theory of liability four years after suit was filed; (2) in denying entry of judgment *n.o.v.* against plaintiff; (3) in denying alternatively motions for a new trial on plaintiff's claim against Sears; and (4) in granting Sears' motion for judgment *n.o.v.* against Otis. We affirm.

The following facts were undisputed at trial. Plaintiff's injury occurred in June 1973, when she slipped and fell while stepping off a moving escalator located at the Sears store in Oak Brook. In July 1973, following her discharge from the hospital, she wrote a letter to Sears advising of her injuries and stating that she had slipped on a liquid substance. The place of her fall was described as the area known as the landing plate or headplate located at the top of the escalator. The letter did not mention that a worn landing plate was responsible or in any way contributed to her accident. On September 19, 1973, plaintiff and her attorney, Frank Koykar, visited the Sears store to observe the place of her fall.

Thereafter, on July 17, 1974, plaintiff filed suit against Sears. An amended complaint was filed on October 21, 1974. Both the complaint and amended complaint alleged negligence on the part of Sears in the operation and maintenance of the escalator by permitting a milky white substance to be placed upon the surface of the escalator, by permitting the slippery substance to remain, and by failing to warn of the said slippery substance. There was no specific allegation referring to any worn

areas on the landing plate. In December 1974 depositions of plaintiff and her husband were taken. Neither plaintiff nor her husband testified about any defect in the landing plate. Plaintiff's attorney participated in the depositions and did not tell Sears' attorney that a landing plate was involved.

On September 20, 1978, two weeks before the close of discovery, plaintiff filed an amended notice to produce at trial pursuant to Supreme Court Rule 237 (73 Ill. 2d R. 237), which for the first time requested information concerning the installation, repair or replacement of the landing plate. On September 25, 1978, plaintiff was granted leave to amend her complaint by adding an allegation that Sears was negligent in that it "failed to replace the landing plate at the top of the escalator here involved when it became worn and slick in spots."

Thereafter, on February 21, 1979, Sears filed a third-party complaint against Otis alleging that if plaintiff was injured due to a worn landing plate as alleged in plaintiff's amendment, those injuries were a result of Otis' breach of its maintenance contract with Sears or, alternatively, were due solely to the negligence of Otis. Otis filed its answer on October 9, 1979, at the time of trial.

## Trial Testimony

Plaintiff testified. Prior to the day of the accident she and her husband would shop occasionally at the Sears store in Oak Brook. She had used the escalator upon which she fell many times before June 24, 1973. One week prior to the accident she had observed that the steel plate on the top of the escalator was "worn smooth" and was "very slick" on the right and left-hand sides. When she stepped off the escalator on the day of the accident, she looked where she was stepping but there was a man directly in front of her and she couldn't see into what she was stepping. She stepped off onto the left side of the escalator where the grooves were worn and smooth and felt she had stepped into something very slippery and slimy. She did not see what she had stepped into nor where she stepped on the plate itself, but she knew where she had stepped because she could just "sense by the feel." The worn spot upon which she stepped was about two inches in size. Plaintiff did not see the alleged slimy substance before or after the fall. Following her fall and after her husband had helped her to their car, she looked at her clothes and noticed a white, milky substance on the left leg of her pants suit, on the sole and heel of her left shoe, and on the sole of her right shoe. Plaintiff's husband was unable to testify at trial due to illness.

Frank Koykar testified at trial over the objection of Sears and Otis. He was a member of the law firm initially retained by plaintiff and was familiar with her claim against Sears, which he earlier had personally

handled. After plaintiff had retained his firm, he visited the Sears store on September 15, 1973, and examined the landing plate on the escalator. He observed patches of wear on the left and right sides of the plate. On the left side the grooves were worn off almost entirely. Plaintiff had told him that she had been injured when she slipped on a slippery substance. His firm has an interest in the outcome of the suit, being entitled to 50% of any fees received by the attorneys at trial. He admitted that he had participated in the lawsuit before trial and in the discovery deposition; further, that his firm had never formally withdrawn as attorneys in the case but had turned over the file to another firm in 1975 for trial. His firm had an agreement with the plaintiff for attorney fees contingent upon the outcome of the trial, amounting to $35 an hour or one-third of the recovery, whichever was greater. His firm had already received some fees. It would receive additional fees if plaintiff was successful in the lawsuit, but it would not receive additional fees if she were not successful.

Max D. Adams testified on behalf of plaintiff over the objection of both Sears and Otis. He was presently employed as a chemist and had, among other degrees, a Ph.D. in chemistry from St. Louis University. For the six years preceding trial he worked in chemistry projects based on analysis of explosions, fires and failures of plastic materials. For the past 25 years he worked in conjunction with chemical engineering groups in design of electronic or mechanical gadgetry for use in chemical and nuclear reactors. He had some familiarity with mechanical design. This was the first case upon which he has been consulted which involved escalators. He had no experience in the design, manufacture, installation or maintenance of escalator equipment and had never consulted with anyone knowledgeable in those fields.

Mr. Adams testified that he examined the bottom of plaintiff's slacks and shoes under a polarizing microscope. He determined that the material on the shoes was an organic one which he could not identify but suspected due to the morphology, that is the shape and surface characteristics of the particles, the material on the pants was at least like an ice cream or milk-shake type of food material.

Mr. Adams also testified that he visited the Sears store at Oak Brook on the day before he testified at trial to measure and photograph the escalator patterns for comparison with the markings on the toes of plaintiff's shoes. He found that the markings were spaced on the shoe in such a manner as to make it quite consistent that they could have been formed by driving the shoe into this type of escalator tread. On cross-examination Mr. Adams admitted that he did not determine that there was anything wrong in the manner in which the escalator was manufactured, designed, installed or maintained, nor did he equate the damaged toe to any kind of malfunction of the equipment itself.

Witness Fenrow Cole testified on behalf of Sears. He has been employed at Sears' Oak Brook store for 10 years. In 1973 he was a porter and presently is assistant foreman in maintenance. The maintenance department cleaned and maintained the escalators and turned them on in the morning, security turning them off at night. Maintenance did nothing other than clean the escalators once or twice a day, if necessary, and if there was anything wrong with the escalators mechanically or functionally, Sears would call Otis. Sears did not itself make any repairs to the escalators, and to his knowledge Otis' representatives would visit the store once or twice a week to check the escalators for operating purposes. It was not part of his job in 1973 to watch what the Otis people did or to see how they did it.

Plaintiff's treating physician and a radiologist testified regarding plaintiff's injuries.

Plaintiff introduced into evidence over Otis' and Sears' objections several color photographs depicting the plaintiff's injured leg taken shortly after surgery, and also showing injuries to her elbow. The photographs evidenced coloration around the injured areas caused by iodine and other materials used in surgery.

The jury returned verdicts in favor of plaintiff and against Sears awarding damages of $22,500 and in favor of Otis, and against Sears on the third-party complaint. Sears' and Otis' motions for judgment *n.o.v.* or, alternatively, for a new trial on plaintiff's complaint were denied. Sears' motion for judgment *n.o.v.* against Otis and on the third-party complaint was granted, with judgment against Otis in the amount of $22,500. Sears and Otis appealed.

OPINION

I

■■ Sears states that an issue for review is whether the trial court abused its discretion and committed reversible error when it allowed plaintiff to amend her amended complaint four years after suit was filed to allege a new theory of liability, namely, that plaintiff's fall was due to a worn landing plate. The record discloses that the accident occurred June 24, 1973, and that the pertinent pleadings were filed as follows; complaint, July 17, 1974; amended complaint, October 21, 1974; the instant amendment, September 20, 1978; and Sears' third-party complaint, February 23, 1979. Trial commenced October 3, 1979. However, Sears' statement has not been pursued by argument or citation of pertinent authority. A mere statement of an issue without support of either citation or argument amounts to a waiver of the issue on appeal. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237; *Ray's Liquors, Inc. v. Newland* (1977), 52 Ill. App.

3d 680, 367 N.E.2d 982; see also Supreme Court Rule 341(e)(7) (73 Ill. 2d R. 341(e)(7).) Accordingly, the foregoing issue is deemed waived.

## II

Both Sears and Otis maintain that Sears' motion for judgment *n.o.v.* against plaintiff should have been granted by the trial court. In essence, they argue that under the *Pedrick* standard, the evidence when viewed in its aspect most favorable to plaintiff so overwhelmingly favors Sears that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Sears and Otis first maintain the plaintiff failed to make out a *prima facie* case against Sears in that the evidence consisted solely of plaintiff's incredible testimony and the highly suspect testimony of her attorney.

Regarding plaintiff's testimony, Otis argues that it is improbable and contrary to common experience that plaintiff would send a letter of complaint to Sears, and be deposed, persistently stating that her fall was caused by a slippery substance, yet wait five years and then tell Sears that the real and only basis for her complaint was the worn landing plate. We do not agree that plaintiff's testimony is so unreasonable, physically impossible or inherently improbable that it should be rejected. Plaintiff's testimony that she knew where she had stepped because she could just "sense by the feel" is not necessarily contrary to common experience of mankind nor physically impossible. Nor is her uncontradicted trial testimony that she observed worn and slick spots upon the landing plate one week before the accident inherently improbable. Further, the argument that we reject her entire testimony as unbelievable or unacceptable for the reason that she waited nearly five years after the accident to claim recovery because of a worn headplate is without merit. We do not believe that under the circumstances of her slip and fall she could be properly required to personally evaluate the evidence indicating the cause of her fall.

■■ Regarding further the testimony of attorney Koykar concerning the landing plate, both Otis and Sears argue that as plaintiff's attorney his testimony was entitled to little or no weight and was, therefore, completely insufficient to either independently prove or corroborate the cause of injury. We recognize that the practice of attorneys becoming witnesses for the parties they represent has been condemned in both civil and criminal trials (see *Lavin v. Civil Service Com.* (1974), 18 Ill. App. 3d 982, 310 N.E.2d 858; *People v. Cain* (1973), 14 Ill. App. 3d 1003, 3013 N.E.2d 756) and that the circumstances of an attorney so testifying may cast a cloud upon his testimony. (*City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941, 349 N.E.2d 532.) The common fiber in the cases expounding the above principles is that the testifying attorney was also participating as

trial counsel. However, the attorney is nonetheless a competent witness and his relationship goes to the weight, not to the competency of his testimony. (*Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 523-24, 314 N.E.2d 549, 556.) In the instant case attorney Koykar's firm was retained by plaintiff in 1973, and he initially had handled her case. Yet, although his firm had not formally withdrawn its appearance, his firm had turned over the case for trial to another firm in 1975. Neither Koykar nor any other member of his firm participated as counsel for plaintiff during trial.

■■ Furthermore, neither Sears nor Otis offered any evidence concerning the condition of the headplate. Under the circumstances, we find that the testimony was not so improbable or unbelievable as to constitute a failure to make a *prima facie* case against Sears.

### III

■■ Otis and Sears also contend that the trial court committed error in refusing to give Sears' instruction which read: "The testimony of an attorney on behalf of his own client is to be given little weight by you." This instruction is not contained in the Illinois Pattern Jury Instructions, Civil (2d ed. 1971) (hereinafter cited as IPI Civil), nor do we find any cases in Illinois where such instruction was previously considered. However, to the contrary, IPI Civil No. 2.09 expressly recommends that no instructions be given on the credibility of special categories of witnesses "such as employees, experts and lawyers." The pertinent comment states that "[t]hese seem to be simply matters of fact for the jury and do not involve legal rules. Unless we are to allow the judge to comment in detail on each witness, it seems wiser to leave these matters to be argued to the jury by counsel." (IPI Civil No. 2.09, Comment.) Here, counsel for Otis and Sears were permitted to freely cross-examine Koykar and to argue to the jury his fee interest and develop any bias he may have in the outcome of the trial. In addition, IPI Civil No. 2.01 as to credibility of witnesses in general and the weight to be given to their testimony was given and provided a sufficient guide for the jury in this respect. The court properly refused the tendered instruction.

### IV

Sears and Otis next contend tht even if her testimony is to be believed, the plaintiff was guilty of contributory negligence as a matter of law in failing (1) to see the worn spot, and (2) to exercise due care in avoiding it. They therefore urge that the denial of Sears' motions for directed verdict and for judgment *n.o.v.* against plaintiff must be reversed. We note that the recent decision in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, has no effect on the decision here because this trial

commenced prior to June 8, 1981, the date on which *Alvis v. Ribar* became effective.

■■■ It is recognized that a person may not knowingly expose herself to danger for an injury which she might have avoided by the exercise of ordinary care (*McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill. App. 2d 39, 243 N.E.2d 657) and that a plaintiff is not excused from looking when she should look and from seeing that which is in the range of vision, and that her duty is amplified by the evidence that the plaintiff had prior knowledge of the hazard. (*Clark v. Quincy Housing Authority* (1967), 86 Ill. App. 2d 458, 229 N.E.2d 780.) However, the use of defective or damaged premises by a person who has knowledge of the defect is not contributory negligence *per se*, and if, while using those premises, such person is in the exercise of ordinary care for her safety, there may be a recovery in case of injury. (See *Ryan v. City of Chicago* (1975), 28 Ill. App. 3d 743, 329 N.E.2d 305, and cases cited therein; see also *McCarthy v. River Forest Golf Club* (1978), 62 Ill. App. 3d 483, 379 N.E.2d 19.) Ordinarily, the question of plaintiff's contributory negligence is one of fact for the jury; nonetheless, when the facts rest solely upon plaintiff's own testimony and the attendant circumstances are not in dispute, the court then has the duty of determining whether she in fact used ordinary care for her own safety. *Rhoades v. W. E. O'Neill Construction Co.* (1980), 80 Ill. App. 3d 1117, 400 N.E.2d 1035; *Podraza v. H. H. Hall Construction Co.* (1977), 50 Ill. App. 3d 643, 365 N.E.2d 944.

■■ Sears and Otis argue that plaintiff had used the escalator involved many times before the accident; that one week before she saw that the steel plate on the escalator was "worn smooth and it was very slick"; and that she was aware on the day of the accident of the worn areas in the landing plate but took no action when stepping off the escalator to avoid them. However, the evidence shows that the escalator was crowded and a man's foot blocked plaintiff's view of the surface of the landing plate. It would be most unusual for a person alighting from a crowded ascending escalator to keep her eyes constantly averted to the landing plate. Furthermore, although plaintiff had ascended the same escalator the week before, she did not slip, nor did any other person walking before her slip or fall. While there are areas in which the court may find conduct to be contributory negligence as a matter of law, we cannot so conclude on the testimony herein. In the instant case, reasonable persons might well differ on the question of contributory negligence based on the testimony and attendant circumstances which were not undisputed. Therefore, the determination of whether plaintiff was guilty of contributory negligence rested with the jury. (*Lewis v. Hull House Association* (1975), 25 Ill. App. 3d 617, 323 N.E.2d 600.) Consistent with the foregoing, we conclude that the evidence when viewed in its aspect most favorable to plaintiff did not

so overwhelmingly favor Sears that no contrary verdict could ever stand (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504) and that the issue of contributory negligence was properly submitted to the jury. Accordingly, the trial court did not err in refusing to grant Sears' motion for directed verdict in its favor and its motion for judgment *n.o.v.* against plaintiff.

## V

■■ Sears and Otis next contend that even if Sears' motion for judgment *n.o.v.* was properly denied, the trial court committed reversible error in not granting Sears' motion for a new trial because the jury's verdict was contrary to the manifest weight of the evidence and a direct result of errors on the part of the trial court. The ultimate question to be considered on appeal, however, is not whether the proceedings below were error free, but whether error was committed which operated to prejudice the appellant or unduly affect the outcome of the case. *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 369 N.E.2d 1346.

■■ Otis argues that the trial court's denial of Otis' motion *in limine* to preclude plaintiff from making any reference to any defective condition of the landing plate as being related to her fall and to bar testimony with respect to any allegations that the landing plate was involved in the fall, was error. Otis maintains that the evidence of a worn landing plate was irrelevant considering the number of years that had passed before the allegations were made in September of 1978, some five years after the alleged occurrence and four years after suit had been filed. Further, Otis maintains that the evidence of the worn spot was irrelevant because it did not tend to prove the presence or absence of the slippery, slimy substance, plaintiff's primary allegation of negligence against Sears, and instead tended to confuse the jury with a new and different theory of negligence by enabling plaintiff to introduce evidence as to both theories. However, evidence is relevant if it tends to prove a fact in controversy or renders a matter in issue more or less probable. (*Intrater v. Thomas* (1977), 54 Ill. App. 3d 709, 369 N.E.2d 1339.) In light of the plaintiff's amendment to the amended complaint and the responsive pleadings filed, including the third-party proceedings, the condition of the landing plate on the day of the injury was clearly an issue in controversy and the mere passage of time did not render such evidence any less relevant to the issues of liability at the time of trial. Otis urges, however, that even otherwise relevant and useful evidence should be excluded whenever the evil or confusion of issues is present, citing *Fullerton v. Robson* (1978), 61 Ill. App. 3d 93, 377 N.E.2d 1044. Unlike *Fullerton,* where the evidence concerned reference to an unrelated antitrust suit against defendants

which was relevant to attack the defendants' credibility, and of such a nature as to confuse the jury and divert its attention from the issues presented at trial, the evidence here sought to be excluded was relevant and material as to the issue of Sears' negligence as alleged, in the plaintiff's amendment to the complaint. We therefore conclude the denial of Otis' motion *in limine* was not error.

## VI

Next Sears and Otis argue that the trial court erred by allowing the testimony of Dr. Adams whom they deem unqualified as an expert witness. They maintain that Dr. Adams, as a chemist, could only testify as to what the substance on the plaintiff's clothes "appeared" to be and that his testimony concerning the toe of plaintiff's shoe and the pattern of the escalator headplate was beyond his alleged field of expertise and therefore no more than a mere observation. Thus, they urge, his testimony was confusing and should have been barred.

■■ Generally, a witness will not be permitted to testify as an expert unless he has knowledge or experience beyond the knowledge of the average person. *Community Consolidated School District No. 169 v. Meneley Construction Co.* (1980), 86 Ill. App. 3d 1101, 409 N.E.2d 66.

■■ However, the record adequately established Dr. Adams' qualifications as an expert chemist. He testified that he had examined plaintiff's pants suit and shoes. He compared the pattern of the escalator tread with the markings on the shoes and determined that the pattern and measurements were consistent. The witness testified that the material on plaintiff's pants suit was of an ice cream or milk-shake type of material which he submitted to a laboratory for analysis as to the chemical composition. However, he was not permitted to render an opinion as to the chemical composition because it was in part based on data and test results given to him by another laboratory. Parenthetically, we note that expert testimony is often based, at least partly, on hearsay evidence and where such evidence is commonly relied upon by experts in the field, such opinion is admissible. (*Montefusco v. Cecon Construction Co.* (1979), 74 Ill. App. 3d 319, 392 N.E.2d 1103.) Dr. Adams' testimony comparing the toe of plaintiff's shoes to the grooves of the escalator tread did not show a malfunction or defect in the escalator but served to establish the location and relationship of plaintiff's fall on the particular escalator. He was only permitted to testify concerning his observations and measurements but not to express an opinion as to the substance on the plaintiff's clothing. Counsel for Otis and Sears had adequate opportunity to cross-examine Dr. Adams regarding his measurements and observations and to elicit an admission that there was nothing in his opinion which suggested that the shoe damage was caused by any malfunction of the escalator. The

testimony of Dr. Adams as to his personal observations was not error and at most was cumulative. Inasmuch as he was precluded from rendering an opinion as an expert, Sears and Otis cannot be heard to claim that they were prejudiced because of the witness' alleged lack of qualifications as an expert in such field. Accordingly, the trial court did not err in permitting Dr. Adams' testimony at trial.

## VII

Next, Sears and Otis argue that it was error to permit plaintiff's after-surgery photographs to be entered into evidence and to be given to the jury. Plaintiff was allowed to introduce two photographs of her elbow as it appeared after her fall and one photograph showing her leg following surgery. Sears and Otis argue that the photographs show injuries not claimed by plaintiff and that the photograph of plaintiff's leg was highly inflammatory because it showed iodine coloration as well as other materials which are used in surgery.

■■ ■ Photographs of injuries are permitted in evidence when they might be helpful to an understanding of the facts, or are material, accurate and correctly portray what they purport to show. (*Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 379 N.E.2d 306.) Otis urges that where detailed medical testimony describes the injury received and the photograph is likely to inflame and prejudice the jury, the photograph is properly excluded. (*Hulsebus v. Russian* (1969), 118 Ill. App. 2d 174, 254 N.E.2d 184.) Our examination of the photographs indicates that they are neither hideous nor gory as those sought to be introduced in *Hulsebus*. The fact that they portray an after-surgery scar, alone, does not make them inflammatory or prejudicial. We do not find that the alleged presence of coloration due to iodine rendered the photograph of plaintiff's leg inflammatory. We note that neither Sears nor Otis made any attempt to cross-examine plaintiff or her physician as to the leg photograph regarding the presence of iodine or other surgical material nor cross-examine as to the photographs of plaintiff's elbow. Therefore, we find that the trial court did not err by admitting these photographs into evidence.

## VIII

We now turn to Otis' contention that the trial court committed reversible error in refusing to submit to the jury Otis' special interrogatory tendered during the conference on instructions. The special interrogatory stated: "Was a proximate cause of the injury to Rose Stach the presence of a worn spot on the escalator landing plate? Yes:_____ No: _____."

■■ Section 65 of the Civil Practice Act provides that the jury must be required on request of any party to find specially upon any material

question or question of fact stated to them in writing; if the answer to such special interrogatory is inconsistent with the general verdict, the former controls the latter. (Ill. Rev. Stat. 1979, ch. 110, par. 65.) A special interrogatory must be given if it is upon an ultimate question of fact and is in proper form. (*Estate of Constas v. Constas* (1976), 42 Ill. App. 3d 223, 355 N.E.2d 683.) It is only when the form of the special interrogatory is objectionable that the trial court has discretion in submitting it to the jury. (*Larson v. Thomashow* (1974), 17 Ill. App. 3d 208, 307 N.E.2d 707; *Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185, 275 N.E.2d 905.) To be in proper form, they must relate to one of the ultimate facts upon which the rights of the parties depend, and must be such that an answer responsive thereto must be inconsistent with some general verdict that might be returned. *Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 406 N.E.2d 544.

Plaintiff contends that this question, posed by Otis to test the general verdict against Sears, was not in proper form because at the time it was tendered there were two allegations against Sears at issue; the first relating to a slippery substance and the second relating to a worn landing plate. Plaintiff argues, therefore, that an answer to this question, when tendered, could not be inconsistent with a general verdict against Sears based upon the two alternate theories of negligence. We agree. The state of the record at the time this special interrogatory was tendered was such that the answer to the special interrogatory would not necessarily be inconsistent with the general verdict. We note that later during the conference on instructions, Sears withdrew its objection to plaintiff's instruction No. 13. This instruction stated only the worn landing plate theory of Sears' negligence. Thereafter, Otis did not again tender the instant special interrogatory, and the jury was subsequently instructed only with respect to the landing plate theory. However, it was not reversible error for the trial court to refuse to submit this interrogatory to the jury at the time it was tendered in this case.

## IX

Finally, we address Otis' contention that the trial court erred in granting Sears' motion for judgment *n.o.v.* against Otis. Otis argues that the court when granting Sears' motion for judgment *n.o.v.* did so on the improper standard of "very contrary to the law and the manifest weight of the evidence."

The proper standard for the granting of judgments *n.o.v.* was stated in *Pedrick v. Peoria & Eastern R.R. Co.*:

"In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelm-

ingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

■■ We agree that the trial court did not apply the proper standard in entering the judgment *n.o.v.* against Otis. However, the court below will be affirmed if it is justified in the law for any reason or ground appearing in the record regardless of whether the particular reasons given by the trial judge, or his specific findings, are correct or sound. (*Continental Grain Co. v. FMC Corp.* (1975), 27 Ill. App. 3d 819, 327 N.E.2d 371.) The *Pedrick* standard may be applied upon review to determine whether the evidence, when viewed in the light most favorable to Otis, so overwhelmingly favors Sears that no contrary verdict could ever stand. (See *Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 382 N.E.2d 232; *Oberman v. Dun & Bradstreet, Inc.* (7th Cir. 1974), 507 F.2d 349.) Thus, we turn now to the question of whether Sears is entitled to a judgment *n.o.v.* against Otis.

Otis argues that the jury verdict for Otis and against Sears on Sears' third-party complaint is supported by the evidence in that the jury must have found either: (1) that Sears, as owner and operator of the escalator, was not in the exercise of ordinary care in its ownership and operation; (2) that Sears was actively negligent in maintaining the escalator; (3) that both Sears and Otis were guilty of the same fault thereby precluding indemnity; or (4) that Otis was not at fault.

Otis relies principally on *Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 382 N.E.2d 232, to support its position that a finding that Sears was negligent in maintaining the escalator does not require a similar finding against Otis since it had a different relationship with and different duties than Sears did with regard to the escalator. Otis' reliance on *Jardine* is misplaced. *Jardine* dealt with an injury caused by a malfunctioning elevator. That court held that owners of a building with elevators are viewed as common carriers who owe their passengers the highest degree of care, while the duty owed by those who undertake to inspect and maintain elevators is only to exercise due care. In *Jardine* the court reasoned that the difference in the standard of care explains the seemingly inconsistent findings that the elevator owner could be found guilty of negligence while the individual who undertook to maintain the elevator was not.

■■ In the instant case Otis assumes that these two distinct levels of duties also apply to the operation and maintenance of escalators but cites no cases in support of this assumption. This is not the law in Illinois. In *Tolman v. Weiboldt Stores, Inc.* (1967), 38 Ill. 2d 519, 233 N.E.2d 33, our supreme court stated that the rule applying to elevators need not necessarily apply to escalators and held that the owner of an escalator owed the plaintiff the same duty to use reasonable care and caution under all the circumstances to keep the premises reasonably safe.

■■ Sears argues that the judgment *n.o.v.* against Otis should be upheld because, as a matter of law, Sears was entitled to indemnity from Otis. Although Illinois law has not allowed contribution among joint tortfeasors,[1] it does permit recovery between third parties on the theory of implied indemnification. (*Marchi v. Indiana Harbor Belt R.R. Co.* (1980), 83 Ill. App. 3d 1005, 404 N.E.2d 938.) Generally, to justify recovery on the remedy of implied indemnity, the record must show either a pre-existing legal relationship between the third-party plaintiff and the third-party defendant or a qualitative difference between the negligence of the two third parties. *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790; *Burgdorff v. International Business Machines* (1975), 35 Ill. App. 3d 192, 341 N.E.2d 122.

In the instant case Sears' liability was predicated solely upon Sears' negligent failure "to replace the landing plate at the top of the escalator here involved when it became worn and slick in spots." Otis had a maintenance contract with Sears under which it undertook to examine, adjust, repair and/or replace, among other things, the comb plate and the landing plate. Otis also undertook to inspect the escalator biweekly. There is no indication that the worn landing plate developed instantaneously. The only maintenance duties Sears retained relative to the escalators was to clean the surface area and to turn them on and off daily. Sears did not have any superior knowledge in the operation or maintenance of said escalator. Nor does it appear that they had knowledge of the point in which a worn landing plate would become dangerous and need replacement.

■■ Under these circumstances Sears' liability was, in essence, derivative in nature, arising only from its ownership and control of the escalator and its duty to maintain a safe place for its customers. We need not, however, speculate as to whether under active-passive negligence theory their negligence was qualitatively different because we find that Otis' assumption of the contractual obligation to examine and replace the escalator landing plate raises a right to indemnification by operation of law. Compare *J. C. Penney Co. v. Westinghouse Electric Corp.* (7th Cir. 1965), 351 F.2d 561, and *Westinghouse Electric Corp. v. J. C. Penney Co.* (Fla. App. 1964), 166 So.2d 211, for factually similar cases that held the maintenance contractor liable.

From our examination of the record, and in view of the above, we find that the jury's verdict for Otis was predicated solely upon the failure of Sears to replace the worn landing plate. The jury, having found that Sears was negligent, there was no legal alternative to the judgment *n.o.v.* in favor of Sears and against Otis. Accordingly, applying the *Pedrick*

---

[1] But see *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 28, 421 N.E.2d 886, 898.

standard, we hold that the judgment *n.o.v.* was proper since all the evidence, when viewed in its aspect most favorable to Otis, so overwhelmingly favors Sears that no contrary verdict based on the evidence could ever stand.

## X

For the above-stated reasons, we affirm the judgment in favor of plaintiff and against Sears, and further affirm the judgment *n.o.v.* in favor of Sears and against Otis.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.